939 F.2d 538
 CHRYSLER MOTORS CORPORATION, Appellee,
v.
THOMAS AUTO COMPANY, INC., Appellant,
Arkansas Motor Vehicle Commission, Intervenor-Defendant.
CHRYSLER MOTORS CORPORATION, Appellee,
v.
THOMAS AUTO COMPANY, INC.,
Arkansas Motor Vehicle Commission, Appellant.
 Nos. 90-2400, 90-2428.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 10, 1991.
Decided July 16, 1991.
 
 Michael G. Smith, Little Rock, Ark., for appellant.
 Patrick J. Goss (argued), Little Rock, Ark., Allan M. Huss and Mary Waldrup, Highland Park, Mich., and H. Keith Morrison and Patrick J. Goss, Little Rock, Ark., on the brief, for appellee.
 Before BOWMAN, Circuit Judge, and HENLEY and FRIEDMAN,* Senior Circuit Judges.
 FRIEDMAN, Senior Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Eastern District of Arkansas (Judge Elsijane T. Roy) dismissing the claims by a former Chrysler automobile dealer that Chrysler's termination of the dealer's franchise violated two Arkansas statutes governing relationships between automobile manufacturers and their dealers and between franchisors and franchisees generally. The district court held that neither statute covers this case. Chrysler Motors Corp. v. Thomas Auto Co., No. LR-C-88-718 (E.D.Ark. Jul. 16, 1990) (order granting partial summary judgment). We affirm.
 
 I.
 
 2
 A. In 1969, the appellant, Thomas Auto Company, Inc. (Thomas), and the appellee, Chrysler Motors Corporation (Chrysler), entered into an agreement authorizing Thomas to sell at retail Chrysler automobiles and automotive products (the Dealer Agreement). Thomas and Chrysler also entered into what Thomas describes as "essentially identical" franchise agreements covering Dodge and Plymouth automobiles and we, therefore, base our decision here on the main Dealer Agreement.
 
 
 3
 The Dealer Agreement had no expiration date. It described in considerable detail the respective rights and duties of Thomas and Chrysler. Thomas could terminate the agreement on 30-days written notice and Chrysler could terminate on 90-days written notice for five specified reasons. Chrysler had "the right to amend this agreement to the extent that CHRYSLER deems advisable, provided that CHRYSLER makes the same amendment in Chrysler Direct Dealer Agreements generally." The pertinent provisions of the Dealer Agreement are further described and discussed in Part II of this opinion.
 
 
 4
 In 1975, several years after the Dealer Agreement was executed, Arkansas enacted the Arkansas Motor Vehicle Commission Act (the Motor Vehicle Act), Ark.Stat.Ann. Sec. 23-112-101 et seq. The Act established a licensing system for automobile manufacturers and dealers, regulated in detail the relationship between manufacturers and dealers, prescribed standards of conduct for the retail automobile business, and created the Arkansas Motor Vehicle Commission to administer the Act. The pertinent provisions of that statute also are described in detail in Part II of this opinion.
 
 
 5
 B. Chrysler filed its complaint against Thomas in October 1988. It asserted that, based on an audit of Thomas it conducted in August 1985, Thomas had committed specified "acts and practices" that "constitute material breaches" of the Dealer Agreement. It sought a declaratory judgment that those acts and practices constituted (1) "grounds for the termination in good faith" of the Dealer Agreement and (2) "good cause for termination" under the Arkansas Motor Vehicle Act to the extent, if at all, that Act applied to the Dealer Agreement. Alternatively, Chrysler contended that the Arkansas Motor Vehicle Act did not apply to the Dealer Agreement because such application would constitute an impairment of contract invalid under Article 1, Section 10, of the United States Constitution.
 
 
 6
 The Arkansas Motor Vehicle Commission intervened to defend the constitutionality of the Arkansas Motor Vehicle Commission Act.
 
 
 7
 Thomas filed an answer denying the charges and a counterclaim. Count I of the counterclaim alleged that Chrysler had violated the Federal Automobile Dealers Franchise Act, 15 U.S.C. Sec. 1221 et seq. (1988), and sought compensatory damages of 2 million dollars and punitive damages of 25 million dollars. Counts II and III asserted that Chrysler had violated the Arkansas Motor Vehicle Commission Act and the Arkansas Franchise Practices Act (the Franchise Act), Ark.Stat.Ann. Sec. 4-72-201 et seq., respectively.
 
 
 8
 Chrysler moved for partial summary judgment with respect to Counts II and III of the counterclaim and the claim for punitive damages under Count I. The district court granted the motions.
 
 
 9
 The court held that "the Arkansas Motor Vehicle Commission Act should only be applied prospectively and it is, thus, inapplicable to agreements between plaintiff and defendant. The Court finds that plaintiff is entitled to judgment as a matter of law upon the claim set out in Count II of defendant's counterclaim." Chrysler Motors Corp. v. Thomas Auto Co., No. LR-C-88-718 (E.D.Ark. Jul. 16, 1990) (order granting partial summary judgment). The court further held that the "defendant has no claim against plaintiff under the Arkansas Franchise Practices Act" because the Dealer Agreement did not give Thomas an exclusive franchise in its territory, which was necessary for the Arkansas Franchise Act to apply. Id. Finally, the court held that an automobile dealer was not entitled to punitive damages under the federal statute. Id. Thomas has not challenged the latter ruling in this appeal.
 
 
 10
 Following the granting of the motion for partial summary judgment, the court, on the parties' joint motion to dismiss and stipulation of dismissal filed pursuant to Fed.R.Civ.P. 41, dismissed without prejudice the remainder of the case. Chrysler Motors Corp. v. Thomas Auto Co., No. LR-C-88-718 (E.D.Ark. Jul. 25, 1990) (order of dismissal). The effect of that action was to make the judgment granting partial summary judgment a final judgment for purposes of appeal, even though the district court had not so certified under Fed.R.Civ.P. 54(b). Merchants & Planters Bank v. Smith, 516 F.2d 355, 356 n. 3 (8th Cir.1975).
 
 
 11
 At oral argument, Chrysler stated that it had terminated Thomas' franchise and that Thomas had filed a new suit that is pending in the district court, which raises the breach of contract and Federal Automobile Dealers' Franchise Act claims asserted in this case.
 
 II.
 
 12
 A. Under Arkansas law, there is "a presumption against the retroactive application of a legislative act. Legislation will not be construed as retroactive when it may reasonably be construed otherwise." Lucas v. Handcock, 266 Ark. 142, 152, 583 S.W.2d 491, 496 (1979) (citations omitted.) "The operation of a statute must be prospective only, 'unless the words are so clear, strong and imperative as to have no other meaning.' " Arkansas Rural Medical Practice Student Loan & Scholarship Bd. v. Luter, 292 Ark. 259, 729 S.W.2d 402, 403 (1987) (quoting with approval United States Fidelity & Guaranty Co. v. Struthers Wells Co., 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908)). "The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other." United States Fidelity & Guaranty Co., 209 U.S. at 314, 28 S.Ct. at 539 (quoted with approval in Abrego v. United Peoples Federal Savings and Loan Ass'n, 281 Ark. 308, 664 S.W.2d 858, 861 (1984)).
 
 
 13
 The Motor Vehicle Act in terms does not apply retroactively, i.e., its provisions are not stated to cover automobile dealer franchise agreements executed before its effective date. Thomas argues, however, that the statutory scheme and some of its provisions require interpreting it as having that effect.
 
 
 14
 Thomas relies upon the preamble to the Act that "enunciates the purpose of the Act as the protection of the economy of this state, the public interest, and the public welfare," the comprehensive character of the regulatory scheme the Act provides, the requirement that dealers file existing franchise agreements in connection with their license applications, and the Act's provision of criminal penalties for violations. We do not think, however, that these conditions would lead the Supreme Court of Arkansas to conclude that the Arkansas legislature intended the Motor Vehicle Act to have retroactive effect. None of these provisions, individually or collectively, suffice to overcome the presumption that statutes ordinarily are prospective in operation.
 
 
 15
 B. The remaining question, therefore, is whether the application of the Motor Vehicle Act to Chrysler's termination of its Dealer Agreement with Thomas, executed several years before the effective date of the Act, would constitute a retroactive application of the Act.
 
 
 16
 As Thomas apparently recognizes, the touchstone for determining that question is whether the statute would "disturb vested rights, or create new obligations" rather than, as Thomas contends it does, merely provide a new procedure or method for enforcing existing rights. See Harrison v. Matthews, 235 Ark. 915, 362 S.W.2d 704, 705 (1962); Alexander v. Lee Way Motor Freight, 15 Ark.App. 41, 689 S.W.2d 3, 5 (1985); Aluminum Company of America v. Neal, 4 Ark.App. 11, 626 S.W.2d 620, 622 (1982). Application of this test requires a more detailed statement of Chrysler's rights under the Dealer Agreement and various provisions of Arkansas law.
 
 
 17
 Chrysler's right to terminate the Dealer Agreement--which is the central substantive issue the parties dispute--is set forth in paragraph 21 of the Agreement as follows:
 
 
 18
 CHRYSLER may terminate this agreement on not less than ninety (90) days' written notice on (1) the failure of DIRECT DEALER to perform fully any of DIRECT DEALER'S undertakings and obligations in Paragraphs 7 through 10 and Paragraph 14 of this agreement, or (2) the death of any person listed in Paragraph 2 of this agreement, other than the death of DIRECT DEALER if he is an individual, or the failure of any such person so listed to continue his active and substantial participation in the management of DIRECT DEALER'S organization, or (3) a misrepresentation of or change in any of the ownership interests listed in Paragraph 3 of this agreement resulting in a transfer of majority control or interest in the capital stock or partnership interest of DIRECT DEALER, unless CHRYSLER has given written approval to such change, or (4) a disagreement, dispute or controversy between or among principals, partners, managers, officers or stockholders of DIRECT DEALER that, in the opinion of CHRYSLER, may affect adversely the operation, management or business of DIRECT DEALER, or (5) the conviction of DIRECT DEALER, or a partner, principal stockholder, officer or manager of DIRECT DEALER of any crime that, in CHRYSLER'S opinion, may affect adversely the operation or business of DIRECT DEALER or the name, good will, or reputation of CHRYSLER, Chrysler products or DIRECT DEALER.
 
 
 19
 The Dealer Agreement specifies the procedures to be followed upon such termination. (The Dealer Agreement also provides for automatic termination in certain circumstances, such as the dealer's death, insolvency or bankruptcy.)
 
 
 20
 Under these provisions, Chrysler may terminate for any of the five specified reasons on 90-days' written notice. If Chrysler does so, Thomas may invoke any of the traditional remedies available to a party to a contract who believes that the other party invalidly has terminated the contract, such as a suit for breach of contract seeking damages or an injunction against termination.
 
 
 21
 The Motor Vehicle Act provides quite different procedures and standards governing an automobile manufacturer's termination of a dealer franchise.
 
 
 22
 The Act makes it "unlawful" for a manufacturer "[t]o terminate or cancel the franchise or selling agreement of any dealer without due cause." Ark.Stat.Ann. Sec. 23-112-403(a)(2)(C). The Act does not define what constitutes "due cause." A willful violation of this provision constitutes a Class B Misdemeanor. Ark.Stat.Ann. Sec. 23-112-401.
 
 
 23
 The Act requires a manufacturer to give the dealer 60-days' written notice of termination, "stating the specific grounds for the termination or cancellation." Ark.Stat.Ann. Sec. 23-112-403(a)(2)(C). Within that period, any dealer who receives such notice may
 
 
 24
 file with the commission a verified complaint for its determination as to whether the termination or cancellation or nonrenewal is unfair within the purview of this chapter. That franchise or selling agreement shall continue in effect until final determination of the issues raised in the complaint, notwithstanding anything to the contrary contained in this chapter or in the franchise or selling agreement.
 
 
 25
 Ark.Stat.Ann. Sec. 23-112-403(a)(2)(C).
 
 
 26
 The Act makes significant and substantial changes in the rights that Chrysler has under its Dealer Agreement. Under the Dealer Agreement, Chrysler may terminate the franchise after 90-days' notice. The only remedy Thomas would then have would be to file a suit for breach of contract. Unless Thomas could obtain an injunction against termination of the franchise in that suit, the Dealer Agreement would end 90 days after the notice is given. Chrysler then could appoint another dealer to operate Thomas' franchise. We disagree with Thomas' characterization of the Dealer Agreement, with its detailed provisions governing termination, as "nothing more than skeletal outlines which allow Chrysler to unilaterally change material terms and provisions from time to time."
 
 
 27
 Under the Act, however, the filing by Thomas of a complaint with the Commission within 60 days of the notice of termination means that the Dealer Agreement "shall continue in effect until final determination of the issues raised in the complaint, notwithstanding anything to the contrary ... in the franchise or selling agreement." Since there is no time limit under the Act within which the Commission must decide the complaint, the effect of the Act could be to continue the Dealer Agreement for a substantial period after its termination, contrary to Chrysler's right under the Dealer Agreement to terminate it 90 days after notice of termination.
 
 
 28
 The standards for determining the propriety of termination under the Act may be quite different than those under the Dealer Agreement. The latter specifies five different grounds for termination, including the dealer's failure "to perform fully any of the DIRECT DEALER'S undertakings and obligations in Paragraphs 7 through 10 and Paragraph 14 of this agreement...." Those paragraphs cover (1) the dealer's selling and servicing obligations, (2) the dealer's obligation to maintain a place of business meeting certain requirements and (3) the dealer's obligation to have sufficient net working capital and net worth (Paragraph 7); the dealer's obligation to advertise Chrysler products (Paragraph 8); the dealer's obligation to make special reports and to keep an "accurate and current" accounting system (Paragraph 9); the dealer's submission of orders for automobiles and parts and accessories (Paragraph 10); and the dealer's sale and supplying of Chrysler parts (Paragraph 14). Violation of any of those paragraphs would constitute a ground for termination of the franchise.
 
 
 29
 The Act prohibits termination of a dealer franchise "without due cause." The Act does not define or particularize this general standard. The issue before the Commission in adjudicating a complaint by a dealer who has received a notice of termination is whether the termination is "unfair" within the purview of the Act. The Act similarly does not define "unfair," although it states that the nonrenewal of a franchise "without due cause, shall constitute an unfair termination or cancellation regardless of the terms of the franchise...." Sec. 23-112-403(a)(2)(C). The Commission presumably has substantial discretion in amplifying and applying those two terms.
 
 
 30
 Thomas argues the Act does not change or limit Chrysler's authority under the Dealer Agreement to terminate a franchise because any termination for one of the grounds specified in the Dealer Agreement would necessarily constitute "due cause" under the Act. There is no way to predict, however, whether the Commission would agree, or whether it would equate the term "unfair" (the standard for adjudicating a complaint filed with it) with the term "due cause" (the permissible basis for terminating a dealer franchise). Moreover, since the Act requires the Commission to determine whether a termination is "unfair within the purview" of the Act, the Commission presumably will consider the various public interest factors and standards set forth in the Act.
 
 
 31
 The Commission might well conclude that, under the broad general standards of the Act, Chrysler's termination of Thomas' franchise was done "without due cause" and was "unfair" even though it constituted an authorized ground for termination under the particularized standards of the Dealer Agreement. Chrysler's complaint alleged, among other things, that Thomas had "claimed as reimbursable repairs, which were not reimbursable within the terms of Chrysler's limited warranties" and "failed to substantiate the amount of labor expended to repair the vehicle, in accordance with Chrysler's established policy." It is quite possible that the Commission could conclude that such conduct by Thomas was not so serious as to constitute "due cause" or sufficiently "unfair" to justify termination of the franchise that Thomas had held for many years.
 
 
 32
 Moreover, if Chrysler willfully violated the Act in terminating Thomas' franchise, Chrysler would have committed a Class B Misdemeanor under Arkansas law and be liable for criminal penalties. The breach by Chrysler of the Dealer Agreement by improperly terminating Thomas' franchise, however, would not constitute a crime or subject Chrysler to criminal penalties.
 
 
 33
 In sum, and contrary to Thomas' contention, the Motor Vehicle Act goes far beyond merely providing new remedies and procedures for enforcing existing rights. Instead, it impinges upon Chrysler's existing rights and imposes new duties upon Chrysler. Applying the Act to Chrysler's termination of its Dealer Agreement with Thomas would constitute an impermissible retroactive application of the Act.
 
 
 34
 C. Thomas relies upon and urges us to follow the decision of the Court of Appeals of North Carolina in Mazda Motors of America, Inc. v. Southwestern Motors, Inc., 36 N.C.App. 1, 243 S.E.2d 793 (1978), aff'd-in-part, rev'd-in-part, 296 N.C. 357, 250 S.E.2d 250 (1979). In there rejecting the contention that application of a similar North Carolina automobile dealers statute to the termination of an automobile dealers franchise constituted an unconstitutional impairment of a contract, the court stated that "[t]he more recent [United States Supreme Court] decisions involving contracts between private parties tend to concentrate upon whether the state law in question involves a disturbance of essential or core expectations arising from the particular type of contract," 243 S.E.2d at 800, and that "[w]hether the statute is applied retroactively or prospectively, the test of constitutionality remains whether the core expectations of the contract have been disturbed, and here they have not." Id. 243 S.E.2d at 802.
 
 
 35
 Thomas argues that application of the Arkansas Motor Vehicle Act to the termination of its Chrysler Dealer Agreement would not disturb the "core expectations" of the parties to that contract. The North Carolina court's statement regarding disruption of the "core expectations" of the contract was made in determining that the North Carolina statute did not unconstitutionally impair the franchise agreement. Our decision in the present case, however, rests on our conclusion that application of the Arkansas statute to the termination of Thomas' franchise would constitute an impermissible retroactive application of the statute, not on any determination that such retroactive application would unconstitutionally impair the franchise agreement. In any event, we do not know whether the Supreme Court of Arkansas would follow the North Carolina court's ruling in Mazda, and we have no reason to assume that it would.
 
 
 36
 D. Our conclusion that the Motor Vehicle Act does not apply to Chrysler's termination of its Dealer Agreement with Thomas does not leave the latter without any effective vehicle for litigating the validity of Chrysler's actions, or deny it effective relief if it can establish that Chrysler improperly terminated the franchise.
 
 
 37
 As noted above, there is pending before the district court a case involving the questions whether Chrysler's termination of Thomas' franchise violated (1) the Federal Automobile Dealers Franchise Act, 15 U.S.C. Sec. 1221 et seq., or (2) the Dealer Agreement. At oral argument, the parties stated that trial of that suit is expected to take place in the Fall. That case will provide an appropriate and full opportunity for Thomas to litigate all pertinent questions concerning the validity of Chrysler's termination of its franchise.
 
 III.
 
 38
 Count III of Thomas' counterclaim alleged that Chrysler's termination of the Dealer Agreement would violate the Arkansas Franchise Practices Act (Franchise Act), Ark.Stat.Ann. Sec. 4-72-201. The district court correctly dismissed that count because the Franchise Act does not cover the Dealer Agreement.
 
 
 39
 The Franchise Act, which governs relations between franchisees and franchisors generally, defines "franchise" as an agreement to sell or distribute goods or services "within an exclusive territory." Ark.Stat.Ann. Sec. 4-72-202(1). Paragraph 1 of the Dealer Agreement gave Thomas "the non-exclusive right" to purchase Chrysler automobiles, parts and accessories for resale in a specified territory. On its face, the Dealer Agreement lacks what the district court called "the requisite exclusivity" required for Franchise Act coverage.
 
 
 40
 Thomas attempts to avoid the plain and clear language of the Dealer Agreement by an ingenious, but unconvincing, argument that the Motor Vehicle Act itself gave Thomas "an exclusive geographical sales territory." Thomas relies on Ark.Stat.Ann. Sec. 23-112-311, which requires a manufacturer seeking to appoint a new dealer to notify both the Motor Vehicle Commission and all dealers in the relevant area, and permits an existing dealer to protest the new dealership to the Commission. The manufacturer may not establish the new dealership until the Commission holds a hearing, and cannot do so at all if, after hearing, the Commission determines "that there is good cause for not permitting the addition ... of the new motor vehicle dealer." Ark.Stat.Ann. Sec. 23-112-311(a)(2).
 
 
 41
 Thomas argues that because Chrysler has not sought Commission authorization to establish a new dealership in Thomas' existing territory and the Commission has not granted that authorization, Thomas' "territory is exclusive."
 
 
 42
 There is no basis for concluding that the limitation of the Franchise Act to "exclusive" franchises was intended to mean anything other than just that or to include such a convoluted theory of exclusivity. "Exclusive" and "non-exclusive" are well-known terms in franchising, and their meaning is clear. The Dealer Agreement explicitly gave Thomas only a "non-exclusive" franchise. Moreover, even under Thomas' theory its franchise would not be exclusive, since at any time the Commission could make it non-exclusive by simply authorizing another dealer in Thomas' territory.
 
 
 43
 The judgment of the district court is affirmed.
 
 
 
 *
 DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation