857 A.2d 135

**Stephon COLLINS, et al.**

v.

**Gui–Fu LI, et al.**

**No. 2533, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Sept. 2, 2004.

Patrick M. Regan (Jonathan E. Halperin, Thanos Basdekis, Regan, Halperin & Long, PLLC, on brief), Washington, DC, Stewart A. Sutton, on brief, Germantown, Clifford B. Sobin, on brief (Berman, Sobin & Gross, on brief), Gaithersburg, for appellant.

Kevin F. Arthur (George E. Brown, Kramon & Graham PA, on brief), Jonathan A. Cusson (Robert H. Bouse, Jr., Anderson, Coe & King, LLP, on brief), Patrick G. Cullen (Rollins, Smalkin, Richards and Mackie, on brief), Baltimore, for appellee.

Panel SALMON, SHARER, and RAYMOND G. THIEME (Retired, Specially Assigned) JJ.

SHARER, J.

These cross appeals, from the Circuit Court for Montgomery County, arise out of several claims and counter claims, resulting from a tragic residential fire that took the lives of two children and catastrophically injured a third child. The procedural issue presented is one of first impression in Maryland.

### The Parties

The original plaintiffs were Stephon Collins, Sr., individually and as Personal Representative of Stephon Collins, Jr.; and Daniel and Patricia Juster, individually and as Personal Representatives of Samuel Juster. The defendants were Dr. Gui–

Fu and Chung Ling Li; Pittway Corp.; Michael Chapman; First Alert, Inc., Sunbeam Corp.; BRK Brands, Inc.; Honeywell International, Inc.; Keith and Catherine Chapman; The Ryland Group, Inc.; and Summit Electric Company.

A later complaint was filed by Michael Chapman and Carolyn Hill, individually and as Parents and Legal Guardians of Kyle, Keith, and Brandon Chapman, against the same defendants and also David E. Dieffenbach, t/a Dedhico Home Improvements, and his employee, Kevin T. Hightower.

Creating this appeal was the circuit court's consent on November 15, 2002, to the dismissal, without prejudice, of all claims between appellants Michael Chapman and Carolyn Hill, as Parents and Legal Guardians of Kyle, Keith, and Brandon Chapman, and appellees Dr. Gui–Fu Li and Chung Ling Li.[1]

By earlier orders, the circuit court had granted appellee/cross-appellant Ryland's motion to dismiss. Subsequently, the court granted Summit Electric's motion to dismiss, or in the alternative, for summary judgment.[2] Motions for reconsideration were denied.

Thereafter, appellants moved to certify the orders of dismissal as a final judgment under Rule 2–602(b)(1), to permit an immediate appeal, effectively for the purpose of litigating Ryland's liability.[3] The manufacturer appellants joined the motion. The circuit court, properly in our view, denied the

---

1. The trial court also granted a voluntary dismissal to claims between appellants Michael Chapman and Carolyn Hill, as Parents and Legal Guardians of Kyle, Keith and Brandon Chapman; appellants Dagmar and Stephon Collins, individually and as Next Friends and co-Personal Representatives of the Estate of Stephon Collins; and appellants Daniel and Patricia Juster, individually and as Next Friends and co-Personal Representatives of the Estate of Samuel Juster as to five defendants who are not parties to this appeal.

2. The parties agreed, at oral argument, that the court essentially granted Summit's motion to dismiss.

3. Ryland characterizes this effort as one to obtain an advisory opinion to guide the future of the litigation. Because Ryland is clearly seen as the deep pockets defendant, we would be hard-pressed to disagree with that characterization.

motion. Appellees Dieffenbach's and Hightower's Motions for Summary Judgment against appellants were granted. Appellee Ryland's Motion to Dismiss was also granted, along with appellee Summit Electric's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Appellants' Motion for Reconsideration as to Ryland and Summit Electric was denied.[4]

Appellants raise four questions for our review:

I. Whether the court erred as a matter of law by granting appellee Ryland Group's Motion to Dismiss under Maryland Rule 2–322.

II. Whether the court erred as a matter of law by granting Summit Electric Co.'s Motion to Dismiss under Maryland Rule 2–322.

III. Whether the Court, to the extent it considered the motions of Ryland and Summit under summary judgment standards, erred by not continuing the hearing on appellees' Ryland Group and Summit Electric Co.'s motions until discovery was completed under the provisions of Maryland Rule 2–501(d).

IV. Whether the court erred as a matter of law by granting appellees Dieffenbach and Hightower's Motions for Summary Judgment, because the issue of causation, including whether or not an intervening act is "foreseeable," is a question of fact for the jury to resolve.

Cross-appellant Ryland presented the following question, which we have rephrased:

Whether the circuit court erred in consenting to the dismissal without prejudice in order to obtain a final judgment, in the face of the court's earlier denial of certification under Maryland Rule 2–602(b).

---

4. The order consenting to the dismissal with prejudice, the orders of dismissal as to Ryland and Summit, and the denial of certification under Maryland Rule 2–602(b) were each considered and ruled on by different judges of the circuit court.

We answer "yes" to Ryland's question and hold that the circuit court abused its discretion pursuant to Md. Rule 2–506(b) by dismissing the several unadjudicated claims without prejudice. Having resolved this appeal on a jurisdictional basis, we need not reach the questions presented by appellants. We shall affirm the court's denial of certification under Maryland Rule 2–602(b), vacate the order permitting the voluntary dismissal without prejudice, and remand to the circuit court for appropriate further proceedings.

## FACTUAL and PROCEDURAL HISTORY

Only a brief summary of the facts is required to place the issues in perspective.

Twelve-year old Samuel Juster and 13–year old Stephon Collins, Jr., sons of appellants Juster and Collins, and 12–year old Kyle Chapman, the son of appellants Michael Chapman and Carolyn Hill, were overnight guests in the Chapman home on June 13, 1998. The Chapmans resided in a single family home at 23 Grantchester Place ("the residence") in Gaithersburg, Maryland, which they had rented since 1991 from the owners of the property, Dr. and Mrs. Gui–Fu Li. The Chapmans' sons' quarters consisted of two windowless enclosed rooms in the basement. The basement also included an additional room in which Mr. Chapman had his office.

On the evening of June 13, 1998, thunderstorms caused an electrical power outage. At the time, the children were playing Monopoly in the basement rooms. Because of the lack of electricity, the room was illuminated by approximately six candles. After the boys went to bed, one candle was left lighted in the basement rec room. Sometime after 5:00 a.m. on June 14, 1998, that single candle caused a fire. Samuel Juster and Stephon Collins died as a result of the fire, and Kyle Chapman suffered severe burns resulting in the amputation of both of his legs.

Although the basement was equipped with a smoke detector, it did not sound because it was hardwired into the home's electrical system, and was not functioning due to the power

outage. The smoke detector did not have a battery-powered backup, even though such equipment was readily available in the marketplace, both at the time of the fire and at the time the residence was constructed.

According to plaintiffs/appellants, the events that gave rise to their claims originated with the construction of the home. They allege negligence by Ryland and Summit for not having installed smoke detectors with alternate battery power, despite the availability of such devices when the home was built in 1989. Subsequent events, they allege, created liability on the part of other defendants.

In early 1994, a water pipe burst in the residence, causing extensive damage in the basement. On February 2, 1994, Dieffenbach, trading as Dedhico Home Improvement, was retained by the Lis and Mr. Chapman to repair the water damage. Included in Dieffenbach's work was the rewiring and cleaning of twenty electrical outlets, which was actually performed by his employee, Hightower. Dieffenbach did not obtain the required permits from the City of Gaithersburg.

As we have noted, appellants fault Ryland, the builder, and Summit, the electrical subcontractor, for failing to install dual-power smoke detectors (with a safety battery backup) when the home was built in 1989, and for failing to provide the homeowner with the users' manual for the AC-powered smoke detectors. The claims against Dieffenbach and Hightower were based upon their having renovated the basement without permits in 1994, failing to replace the AC-powered smoke detectors with dual-powered smoke detectors, and failing to warn the owners and occupants that the use of the enclosed rooms in the basement as sleeping areas was contrary to local code restrictions.

Dieffenbach's and Hightower's motions for summary judgment were granted. Ryland's motion to dismiss was also granted, as was Summit's motion to dismiss. Appellants' motion for reconsideration of the Ryland and Summit rulings was denied, and this timely appeal ensued.

## STANDARD of REVIEW

The principles of appellate review require that, "absent a clear abuse of discretion, a chancellor's decision that is grounded in law and based upon facts that are not clearly erroneous will not be disturbed." *Bagley v. Bagley*, 98 Md. App. 18, 31–32, 632 A.2d 229 (1993) (citing *Domingues v. Johnson*, 323 Md. 486, 492 n. 2, 593 A.2d 1133 (1991) (citations omitted)), *cert. denied*, 334 Md. 18, 637 A.2d 1191 (1994). A trial judge possesses the discretion to determine the proper disposition of the case only where "the findings are supported by evidence and therefore not clearly erroneous." *Bagley, supra,* 98 Md.App. at 32, 632 A.2d 229 (citations omitted).

## DISCUSSION

*I.* ***Whether the circuit court erred in consenting to the dismissal without prejudice in order to obtain final judgment, in the face of the court's earlier denial of certification under Maryland Rule 2–602(b).***

Ryland argues that the circuit court abused its discretion under Md. Rule 2–506(b) [5] by permitting appellants to fabri-

5. Maryland Rule 2–506 provides in part:

  (a) *By Notice of Dismissal or Stipulation.* Except as otherwise provided in these rules or by statute, a plaintiff may dismiss an action without leave of court (1) by filing a notice of dismissal at any time before the adverse party files an answer or a motion for summary judgment or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

  (b) *By Order of Court.* Except as provided in section (a) of this Rule, a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded prior to the filing of plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who pleaded the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

  (c) *Effect.* Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.

Md. Rule 2–506(a), (b), (c) (2004).

cate a final judgment by dismissing their unadjudicated claims without prejudice in order to prosecute an immediate appeal. That, they posit, had the effect of enabling appellants to obtain this Court's advice as to Ryland's liability. Ryland further argues that, because the circuit court earlier declined to certify the judgments as final under Rule 2–602(b), the voluntary dismissal device was a transparent effort to circumvent the earlier ruling. They argue that appellants clearly intend to reassert their claims following a merits ruling by this Court, and point to the tolling agreement between all of the parties who had earlier dismissed with prejudice, and other defendants.

Appellants counter that this argument is without merit because Ryland has no standing to object to the Rule 2–506(b) dismissals and no right to a cross appeal;[6] appellants did not engage in any collusive or fraudulent behavior; the posture of the case changed significantly between the time of the trial court's original denial of the Rule 2–602(b) motion, thus creating a final appealable judgment; and finally, that appellee's citation of Federal case law is inapposite to the facts of the case.

### Maryland Rule 2–602 provides:

(a) *Generally.* Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;.

(2) does not terminate the action as to any of the claims or any of the parties; and.

---

6. Appellee Ryland has standing to pursue the cross-appeal, pursuant to Md. Rule 2–602(a)(2).

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) *When allowed.* If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or.

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

The purpose of the rule is to prevent the expense and delay that result from piecemeal appeals. Judge Moylan, writing for this Court, detailed the importance of certifying an order as a final judgment:

> Primary considerations are the strong policy against piece-meal [*sic* ] appeals and the interests of judicial economy. Both of these factors weigh heavily against certification, and in assessing them, it is important to consider whether the same issues will have to be considered by the appellate court on successive appeals. Whether the determination of the remaining claims may render moot the need for the review being sought should also be considered, as should the question of whether entertaining the appeal upon the merits would require us to determine questions that are still before the trial court. The trial judge should then weigh the exigencies of the case against those factors and consider the possible harsh effects of delaying an appeal until the entire case has been completed. The most obvious among these is a harsh economic effect, but there may be others depending on the circumstances of each case.

*Allstate Ins. Co. v. Angeletti,* 71 Md.App. 210, 219, 524 A.2d 798 (1987) (*citing Canterbury Riding Condo. v. Chesapeake Investors, Inc.,* 66 Md.App. 635, 505 A.2d 858 (1986)). Md. Rule 2–602(b) is a "limited and tightly circumscribed exception" to the final judgment rule. *Tharp v. Disabled Am. Veterans Dep't of Md., Inc.,* 121 Md.App. 548, 557, 710 A.2d

378 (1998) (citations omitted). We have recently reiterated Maryland's appellate policy disfavoring piecemeal appeals. *See Murphy v. Steele Software Sys. Corp.,* 144 Md.App. 384, 798 A.2d 1149 (2002).

### Federal Authority

Ryland urges us to follow the federal cases of *Ryan v. Occidental Petroleum Corp.,* 577 F.2d 298 (5th Cir.1978), and its progeny; appellants urge us to follow a line of cases contrary to *Ryan,* and argue that we should not be persuaded by "discredited, misleading and outdated case law." We therefore turn to *Ryan* and similar subsequent cases.

■ The federal counterpart, and the rule from which Maryland Rule 2–506 is derived, is FED. R. CIV. P. 42. In *Milburn v. Milburn,* 142 Md.App. 518, 790 A.2d 744 (2002), we noted that interpretations of Federal Rule 42 can be used to glean the purpose of Md. Rule 2–506:

> Appellant urges us to look to case law interpreting the Federal Rules of Civil Procedure (Fed.R.Civ.P.) in our analysis of Rule 2–506 because, as noted in [*State of New Jersey ex rel. Lennon v. Strazzella,* 331 Md. 270, 627 A.2d 1055 (1993)], this rule emanated from Fed.R.Civ.P. 41. *Lennon,* 331 Md. at 279, 627 A.2d 1055. We agree that the interpretations of Fed.R.Civ.P. 41 provide us with insight into the purpose of the Maryland rule concerning voluntary dismissal. Federal R. Civ. P. 41(a) is clear; construing Fed.R.Civ.P. 41(a), the Court of Appeals for the Fourth Circuit has stated that, "[a]s the [r]ule's text makes plain, the universe of plaintiff-initiated, voluntary dismissals is broken into two categories." *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel,* 2 F.3d 544, 546 (4th Cir. 1993). One category involves the situations in which the plaintiff may dismiss of his or her own volition, without any limitations by the trial court. *Piedmont Interstate Fair Ass'n v. Bean,* 209 F.2d 942, 945 (4th Cir.1954). The purpose behind this provision is to allow a person to withdraw his or her claim when no one will be prejudiced by such action. *Id.* Once the case has been prepared for trial,

however, and one of the parties will be prejudiced by a dismissal, Rule 41(b) requires leave of court. Id. There is a third scenario: when the parties act in concert. As stated in Fed.R.Civ.P. 41(a)(2), in this situation, no leave of court is required. We apply this reasoning to our analysis of Rule 2–506 below.

Like Fed.R.Civ.P. 41, Rule 2–506 is clear and unambiguous; voluntary dismissal may be obtained in three situations. A party may file a notice prior to the filing of an answer or motion for summary judgment by the adverse party or a stipulation signed by all parties; or he or she may obtain leave of court. The rule clearly mandates that there will be situations when a trial court will be required to exercise its discretion in granting a voluntary dismissal; however, there will also be situations when the parties, as opposed to the trial court, may, without leave of court, dismiss the cause of action.

*Id.* at 532–33, 790 A.2d 744.

### Ryan v. Occidental Petroleum Corp.

Ryan sought recovery against Occidental for actual and exemplary damages concerning his discharge from an Occidental subsidiary. *Ryan, supra,* 577 F.2d at 300. The district court granted Occidental's motion to dismiss several paragraphs of the complaint for failure to state a claim under FED.R.CIV.P. 12(b)(6). *Id.* Ryan contested the ruling and asked for certification under FED.R.CIV.P. 54(b).[7] *Id.* The district court granted Ryan's request, but then vacated the certification and substituted an order granting Ryan's motion for voluntary dismissal of the single substantive allegation remaining in his complaint. *Id.* The substitution occurred after the court heard argument on the certification as a final order issue. In its eventual dismissal, the court noted Ryan's dismissal was without prejudice to his right to file again in the same or any other court. *Id.* Ryan then appealed the district

---

7. Md. Rule 2–602 is derived from FED.R.CIV P. 54(b). *See, e.g., Diener Enters., Inc. v. Miller,* 266 Md. 551, 554, 295 A.2d 470 (1972).

court's two original orders dismissing and striking certain paragraphs and language in the complaint. *Id.*

The Fifth Circuit Court of Appeals reiterated its jurisdictional requirement that a judgment be final in order to be reviewed, and stressed that appellate courts must exercise caution when departing from this requirement. *Ryan, supra,* 577 F.2d at 301. The court stated, absent a certification under Rule 54(b) and entry of judgment, "we may not entertain appeals from partial dispositions or orders unless they fall within limited exceptions to the usual finality rule." [8]   *Id.*

### *Ryan's* Progeny

The *Ryan* court found that Ryan's case did not fall under any of the enumerated exceptions [9] and held that there was no

---

**8.**  The court in *Ryan* detailed the exceptions to the finality rule:

These exceptions, as set out in our recent opinion in *Huckeby v. Frozen Food Express*, 555 F.2d 542 (5th Cir.1977), authorize appeals without Rule 54(b) certification only where (1) the order is made appealable by statute or is certified under 28 U.S.C. § 1292(b); (2) the rulings of the Supreme Court or of this court permit appeal of "an order, otherwise nonappealable, determining substantial rights of the parties *which will be irreparably lost if review is delayed until final judgment,"* *Huckeby,* 555 F.2d at 549, *quoting* (emphasis added) *United States v. Wood,* 295 F.2d [772, 778 (5th Cir.1961), *cert. denied,* 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1961)]; or (3) the rule of *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973), authorizes an appeal from a series of orders which, considered together, terminate the litigation "just as effectively as would have been the case had the district judge gone through the motions of entering a single order formally reciting the substance of the earlier ... orders."

*Ryan, supra,* 577 F.2d at 301 (footnote omitted).

**9.**  Although appellants do not raise this issue, we shall dispose of it *sua sponte* for purposes of completeness. Just as the court in *Ryan* found that the *Jetco* exception did not apply to the plaintiff, we, too, find the facts before us distinguishable. *Jetco* was a multi-party case in which two successive orders, although technically interlocutory, disposed entirely of the plaintiff's cause of action against three separate defendants, and the plaintiff appealed from the rulings in his action against one of the defendants, all of which were adverse. In *Ryan,* the plaintiff also appealed only from adverse rulings; however, Ryan did not face adverse rulings on his entire case, because the court found that a voluntary dismissal cannot be deemed an "adverse ruling" as it was without prejudice, and therefore could be revived. The sum of the adverse

final judgment as "the torso of [Ryan's] complaint—including the identification of the parties and the jurisdictional allegations" remained before the district court. *Id.* The district court's denial of certification did not permit it to reach the same result (a "final" appealable decision) through the consent to a voluntary dismissal. *Id.* at 302–303; *see Cook v. Rocky Mountain Bank Note Co.,* 974 F.2d 147–48 (10th Cir.1992). The *Ryan* court found the facts to be analogous to other scenarios in which it found circumvention of the requirements of Rule 54(b), including a district court's attempt to dismiss a main claim after displacing a counterclaim to another pending lawsuit, and a situation in which the parties and the court attempt to reach an agreement for the purpose of rendering an order appealable. *Ryan, supra,* 577 F.2d at 302–303 (citations omitted).

Since the *Ryan* decision in 1978, other circuits have considered the issue. In *Great Rivers Coop. of Southeastern Iowa v. Farmland Indus., Inc.,* 198 F.3d 685 (8th Cir.1999), a class action suit, the Eighth Circuit declined to follow *Ryan* "[i]n this unique procedural posture. . . ." The plaintiffs in that case appealed from the district court's decision granting partial summary judgment, rejecting their securities, unjust enrichment, and part of their breach of fiduciary duty claims. *Great Rivers, supra,* 198 F.3d at 687. When the summary judgment orders were initially entered, the district court certified the order as final pursuant to Rule 54(b). The Court of Appeals rejected the district court's Rule 54(b) certification and dismissed the appeals for lack of final judgment. *Id.* at 688. The court held:

---

rulings against Ryan did not terminate the litigation, and therefore, the *Jetco* exception did not apply. *See Ryan, supra,* 577 F.2d at 301–302.

Appellants here received exactly what they sought, a voluntary dismissal of the claims against Michael Chapman and Carolyn Hill, as Parents and Legal Guardians of Kyle, Keith and Brandon Chapman, and Dr. Gui-Fu Li and Chung Ling Li. Further, the orders did not effectively terminate the entire litigation. While there may be potential issues with the tolling of the statute of limitations, there are methods by which this litigation may be revived and continued. Thus, we do not find the *Jetco* exception to apply.

Thus, there can be little doubt that basing this appeal on a disingenuous voluntary dismissal was contrary to the strong policy that parties must "raise all claims of error in a single appeal following final judgment on the merits." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). A plaintiff whose strongest claims have been dismissed in an interlocutory order may expedite appeal by dismissing its remaining claims *with prejudice.* But a dismissal without prejudice, coupled with the intent to refile the voluntarily dismissed claims after an appeal of the interlocutory order, is a clear evasion of the judicial and statutory limits on appellate jurisdiction.

*Id.* at 688 (emphasis in original).

In declining to dismiss under *Ryan,* the court noted its concern "that these decisions ignore the well-established test for determining whether a district court judgment that seemingly ends the case is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Id.* at 689. The court noted that in order for a judgment or decision to be final, there must be " 'some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned, is the end of the case.' " *Id.* quoting *Goodwin v. United States,* 67 F.3d 149, 151 (8th Cir.1995) (quoting *Fiataruolo v. United States,* 8 F.3d 930, 937 (2d Cir.1993)). The court found that the final judgment of the district court dismissing the class's complaint in its entirety, constituted a final decision. *Id.* Ultimately, under an abuse of discretion standard,[10] the court held:

---

10. The court noted that it considered the issue of whether plaintiffs had attempted to manufacture appellate jurisdiction to be improperly categorized. Due to the parties' intention to dismiss all remaining claims without prejudice under FED R.CIV.P. 41(a)(2) (as opposed to 41(a)(1)(ii)), which requires the discretion of the trial court, the issue was not to be considered jurisdictional, rather a question of whether the trial court abused its discretion when it dismissed the remaining claims without prejudice for the purpose of allowing the class to appeal the interlocutory summary judgment orders of the court. *See Great Rivers, supra,* 198 F.3d at 689–90.

> In most cases ... a district court does abuse its discretion when it frustrates the limitations on federal appellate jurisdiction by entering a Rule 41(a)(2) order dismissing remaining claims without prejudice for the purpose of facilitating the immediate appeal of an earlier interlocutory order. Certainly in this case, after we dismissed the initial appeals of the district court's interlocutory summary judgment orders, granting the class's Rule 41(a)(2) motion was a clear abuse of discretion.

*Id.* at 689–90.[11]

In *Smith v. Lincoln Meadows Homeowners Ass'n, Inc.*, 267 Neb. 849, 678 N.W.2d 726 (2004), Smith, injured when a swing broke, brought a premises liability action against a homeowner's association. Smith sued the association for damages including various injuries, disability, lost wages, and "most pertinent" that her fall triggered the onset of multiple sclerosis (MS). *Id.* at 728. The homeowner's association filed "a pretrial motion for partial summary judgment on the allegation of MS, in conjunction with a motion in limine to exclude the plaintiff's expert testimony supporting that allegation." *Id.* The court found plaintiff's expert testimony to be inadmissible, granted the motion in limine, and entered partial summary judgment with respect to MS damages, as Smith was left without expert testimony to support that claim. *Id.* Smith then filed a motion to dismiss her cause of action, without

---

As plaintiffs here sought a voluntary dismissal under Maryland Rule 2–506(a), which was derived from FED.R.CIV.P. 41(a)(1), we *do not* employ the same logic as the *Great Rivers* court, but choose to review the case in terms of jurisdiction, and not abuse of discretion.

11. Ultimately, the court in *Great Rivers* reached the merits of the case even though it "strongly disapprove[d] of [the] ... use of a dismissal without prejudice to create what is in substance an impermissible interlocutory appeal." The court concluded, "In this unique procedural posture ... fairness to the certified class of plaintiffs justifies our reaching the merits of their appeal. As the question is one of discretion, not jurisdiction, we will do so." *Great Rivers, supra*, 198 F.3d at 690.

Unlike *Great Rivers*, our decision is one of jurisdiction, and not discretion; therefore, as further discussed *infra*, we decline to reach the merits of appellants' case.

prejudice, and asked the court for a final order so that she could appeal the grant of partial summary judgment. The court granted the motion to dismiss and signed a prepared order stating: " 'the Plaintiff shall have the right if she so elects to timely appeal this Court's now final ruling on the issue of multiple sclerosis[.]' " *Id.* at 729.

Before reaching the merits of her appeal, the appellate court raised the jurisdictional issue of whether Smith's voluntary dismissal without prejudice, under those circumstances, effectively created finality and conferred appellate jurisdiction. The court concluded that it did not, vacated the lower court's order of dismissal, and dismissed Smith's appeal. *Id.*

*Smith* is factually inapposite. However, Smith cited to the *Great Rivers* case and Eighth Circuit authority, both of which were addressed by the court, stating:

> [W]e note that the Eighth Circuit's holding is a minority view; the general rule is that a plaintiff cannot appeal from the dismissal of some claims when the balance of his or her claims have been voluntarily dismissed without prejudice. *See, e.g., Construction Aggregates v. Forest Commodities Corp.,* 147 F.3d 1334 (11th Cir.1998); *Chappelle v. Beacon Communications Corp.,* 84 F.3d 652 (2d Cir.1996); *Concha v. London,* 62 F.3d 1493 (9th Cir.1995); *Cook v. Rocky Mountain Bank Note Co.,* 974 F.2d 147 (10th Cir.1992); *Horwitz v. Alloy Automotive Co.,* 957 F.2d 1431 (7th Cir. 1992); *Management Investors v. United Mine Wkrs., Etc.,* 610 F.2d 384 (6th Cir.1979). *See, generally,* 15A Charles Alan Wright et al., Federal Practice and Procedure § 3914.8 (1992 & Supp.2002). Those courts have reasoned that "because a dismissal without prejudice does not preclude another action on the same claims, a plaintiff who is permitted to appeal following a voluntary dismissal without prejudice will effectively have secured an otherwise unavailable interlocutory appeal." *Chappelle,* 84 F.3d at 654.

*Id.* at 731.

The court in *Orion Fin. Corp. of S.D. v. Am. Foods Group, Inc.,* 201 F.3d 1047 (8th Cir.2000), also addressed *Great Riv-*

*ers.* The dispute in *Orion* arose from an agreement in which Orion agreed to assist American Foods in procuring financing in the form of grants and loans, in exchange for compensation. *Orion, supra,* 201 F.3d at 1047. After terminating their relationship under the agreement, the parties disputed the amount owed to Orion. *Id.* Orion's suit sought damages, and American Foods filed a counterclaim alleging overpayment to Orion. Eventually, the district court entered a partial summary judgment awarding Orion damages and prejudgment interest. The parties entered into two stipulations in order to secure an immediate appeal.[12] *Id.* at 1048. Incorporating the prior partial summary judgment and the two stipulations, the district court entered judgment against American Foods. *Id.*

On appeal, the parties disputed the meaning of the stipulations, and the appellate court held that the parties were playing "fast and loose" with appellate resources, and were defeating the purpose of the final judgment rule in FED. R. CIV. P. 54(b). *Id.* at 1048–49. The court rejected *Great Rivers* and chose to follow *Cheng v. Commissioner, Internal Revenue Serv.* 878 F.2d 306 (9th Cir.1989):

> The parties in *Cheng* entered into a stipulation following entry of a partial summary judgment in order to obtain an appealable final order. The stipulation provided for entry of a final order but noted that Cheng "is not conceding the remaining undecided issues and should a decision be entered in favor of [Cheng] on appeal and the case remanded . . . [he] will, on remand, be permitted to present additional evidence and arguments. . . ." [*Cheng, supra,* 878 F.2d] at 308. The Ninth Circuit held that the order following the stipulation did not conclusively end the litigation on the merits because the stipulation allowed for the resurrection

---

**12.** The district court awarded Orion damages in the amount of $231,318, and prejudgment interest in the amount of $33,250. Because of American Foods' earlier payments and the parties' agreed-upon cap on recovery, the partial summary judgment left only $24,182 available to Orion. This result caused the parties to enter into the two stipulations, which provided for an additional money judgment and the entry of final judgment. *Orion, supra,* 201 F.3d at 1048.

of stipulated claims depending upon the outcome of the initial appeal. Consequently, the court dismissed the appeal for lack of jurisdiction. [FN3]

FN3. The Ninth Circuit distinguished *Cheng* in the case of *Horn v. Berdon, Inc. Defined Benefit Pension Plan,* 938 F.2d 125 (9th Cir.1991). In *Horn,* the parties stipulated to dismiss the defendant's counterclaim without prejudice and the appellate court found jurisdiction. This is similar to our recent case, *[Great Rivers]*, in which this court refused to follow *Cheng.* In *Great Rivers,* this court held that a dismissal of certain claims without prejudice does not necessarily defeat the rule of finality as to the remaining claims. A close reading of *Cheng,* however, demonstrates that it is distinguishable from *Great Rivers* and *Horn.* In *Cheng,* the court observed: "[a] plaintiff may voluntarily dismiss the remainder of his claim(s) after a partial summary judgment has been entered against him and then appeal the partial summary judgment." *Cheng,* 878 F.2d at 311. However, the court noted that Cheng had not taken this path and had instead elected to retain his undecided claim and defenses in case of favorable outcome on appeal.

We feel the present case is most closely aligned with *Cheng.*

In the present case the parties wish to challenge on appeal issues that are still within the lawsuit and, if successful, challenge them again in further litigation. This approach defeats the very purpose of finality and Rule 54(b). Consequently, it is clear that the order is not final and that only a partial judgment has been rendered from the previous proceedings. Under the circumstances, the court has no alternative other than to dismiss the appeal as lacking finality in the judgment.

*Orion, supra,* 201 F.3d at 1049.

## There is No Universal Adoption or Rejection of the *Ryan Rule*

Upon review of the relevant case law, there appears to be no clear unanimous following of the *Ryan* rule among the

Federal circuits, contrary to appellants' argument that the rejection of *Ryan* is virtually universal.[13] As in *Smith, supra,* the court in *Swope v. Columbian Chems. Co.,* 281 F.3d 185 (5th Cir.2002), discussed the treatment of *Ryan* by various circuits.[14] Although the facts of *Swope* are not on point with the instant case, the Court's discussion of *Ryan* aids in our review:

> It is a settled rule in the Fifth Circuit that appellate jurisdiction over a non-final order cannot be created by dismissing the remaining claims without prejudice. This rule originated in *Ryan v. Occidental Petroleum Corp.,* in which a district court granted a defendant's motion and dismissed the majority of plaintiff's complaint.
>
> *  *  *
>
> The Ryan rule is employed by three of our sister circuits. [Footnote 20, citing *Cook v. Rocky Mountain Bank Note Co., supra; Chappelle v. Beacon Communications Corp., supra;* and *State Treasurer v. Barry,* 168 F.3d 8 (11th Cir.1999).] But two circuits have adopted a rule directly contrary to that of *Ryan.* [Footnote 21, citing *Hicks v. NLO, Inc.,* 825 F.2d 118, 120 (6th Cir.1987); and *Chrysler Motors Corp. v. Thomas Auto Co.,* 939 F.2d 538, 540 (8th Cir.1991).]

---

**13.** In fact, as will be discussed, *infra,* **only two circuits** reject *Ryan* outright. *See Swope v. Columbian Chems. Co.,* 281 F.3d 185, 193 n. 21. In footnote 21, the *Swope* court cites *Chrysler Motors Corp. v. Thomas Auto Co.,* 939 F.2d 538, 540 (8th Cir.1999)—the very same case cited by appellants as support for their contention that the rejection of the *Ryan* rule is "consistent with most of the [F]ederal circuits."

**14.** Swope and his wife brought suit against his employer alleging that he had become totally and permanently disabled by lung damage as a result of exposure to ozone in the course of his employment. *Swope, supra,* 281 F.3d at 189. The district court granted summary judgment on all of the Swopes' claims with the exception of product liability, which was dismissed voluntarily by the Swopes to gain appellate review of the summary judgment orders. *See id.* at 190. The Swopes signed a stipulation that the dismissal would be with prejudice if the trial court's summary judgment motion was affirmed on appeal, and without if reversed. *Id.* The appellees challenged appellate jurisdiction on the issue of finality. The court proceeded to the merits of the appeal because the lower court certified its summary judgment ruling as final after the stipulated motion to dismiss was qualified.

In addition, three circuits have adopted a sort of middle way that requires them to evaluate cases on an individual basis. [Footnote 22, citing *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1155 (3d Cir.1986); *Horwitz v. Alloy Auto. Co.*, 957 F.2d 1431, 1435–36 (7th Cir.1992); *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1075 (9th Cir.1994).] Perhaps because of these widely varying approaches, the merits of the Ryan rule were discussed extensively in the Eleventh Circuit opinion of *State Treasurer v. Barry*. There, a majority of the court defended the Eleventh Circuit's maintenance of the *Ryan* rule while Judge Cox, in a special concurrence, urged en banc reconsideration of the rule.

*       *       *

Hence, the *Ryan* rule requiring Rule 54(b) certification to create finality will not prevent an appeal where one is warranted.  This is especially so since the abrogation of Ryan's other rule that Rule 54(b) certification is only to be granted in the "infrequent harsh case."  The fact that the denial of a Rule 54(b) certification is reviewable for abuse of discretion is additional insurance.[15]

*       *       *

The Seventh and the Ninth Circuits have adopted an in-between rule that allows jurisdiction as long as the parties have not intended to manipulate the system.  However, here we agree with Judge Cox and reject the "practice of combing the record for manipulative intent" since it "waste[s] resources better spent on the merits of an appeal."  *Ryan's* bright-line rule is therefore preferable as it fosters predictability and streamlines review.

*Swope, supra*, 281 F.3d at 192–194 (some footnotes omitted); *but see Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1077–78 (9th Cir.1994).

---

**15.**  It should be noted here that appellants' claim that the rule in *Ryan* has been abrogated is somewhat misleading.  The rule of Ryan that has been abrogated, that Rule 54(b) certification is only to be granted in the "infrequent harsh case," is not the rule at issue in this appeal.

Appellants fault appellees' reliance on *Ryan*, and argue that it is "severely discredited," and that we should not be persuaded by appellees' use of "discredited, misleading and outdated case law." Appellants opt for the analysis set forth in *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064 (9th Cir.2002).

In *James*, the district court's grant of partial summary judgment related only to claims brought by the plaintiff under contracts between 1977 and 1982, but did not adjudicate claims related to two post–1982 book series.[16] *James, supra*, 283 F.3d at 1065. After partial summary judgment was entered for Price Stern, James moved to dismiss the remaining claims, and the district court granted a dismissal without prejudice. *Id.*

The court opined that, absent a stipulation stating that the party dismissing without prejudice intends to resurrect its dismissed claims in the event of a reversal, "Such a unilateral dismissal is therefore much less likely to reflect manipulation. The court's approval of the motion is usually sufficient to ensure that everything is kosher."[17] *Id.* at 1066. In discuss-

---

16. Robin James, a successful artist, illustrated a series of children's books for Price Stern Sloan, Inc., for five years. As the books became popular, James's illustrations rose in value and years later, James requested her original artwork. *James, supra*, 283 F.3d at 1065. After returning half of the illustrations, Price Stern told James that the remainder were irretrievably lost, and James sued for compensation for the lost artwork. *Id.* Price Stern responded by arguing that contracts governing James's work between 1977 and 1982 assigned the ownership of the artwork to Price Stern, and the district court granted Price Stern's partial summary judgment with respect to claims related to those contracts. *Id.*

17. The court in *James* then followed with this reasoning:

Of course, the other party's failure to oppose the dismissal may be collusive (i.e. the result of a side agreement not brought to the court's attention), but Price Stern mentions no such agreement, and it would surely be aware of one if it did exist.
*James, supra*, 283 F.3d at 1066. Appellees argue that in the instant case, plaintiffs colluded with certain of the dismissed defendants. However, no direct proof of such an agreement has been offered, and there is no indication of such an agreement in the record. Although we recognize the common interest of certain of the parties in having

ing *Ryan*'s varying levels of acceptance in different circuits, the court noted that it chose to follow the circuits that rejected *Ryan. Id.* at 1069–70; *see also* n. 12 *infra.*

Because of Maryland's strong policy against piecemeal appeals, we conclude that the rules of *Ryan* and its progeny are a more accurate reflection of the law of this State. For those reasons, we reject the *Great Rivers* and *James* approach. As the court in *Smith, supra,* reasoned, "If a 'voluntary dismissal exception' were to provide a mechanism for securing appellate review of any trial court order, the 'exception' would quickly subsume the rule, and we would be left without any meaningful way to regulate interlocutory appeals." *Smith, supra* 678 N.W.2d at 732.

> The final judgment rule serves various important objectives: It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment."

*Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (citations omitted).

We agree with appellee that additional proceedings below may moot certain of the issues that appellants present in this appeal. Should we have reached the merits of appellants' appeal, they would then be free to revive previously dismissed claims against certain parties, potentially armed with this court's ruling on causation with regard to certain appellees. The final judgment rule cannot be circumvented by voluntary

---

Ryland in the case as a defendant, in the absence of adequate proof on the record, we decline to address appellees' allegations of collusion.

dismissal pursuant to Rule 2–506. Rule 2–602 may not be used to certify questions of law from the circuit courts to the appellate courts. *Angeletti, supra,* 71 Md.App. at 219, 524 A.2d 798.

The circuit court's grant of appellants' dismissal without prejudice is not a final appealable order, for appellants may choose to resurrect their dismissed claims. We therefore dismiss this appeal for lack of finality of judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY DENYING CERTIFICATION OF FINAL JUDGMENT UNDER MARYLAND RULE 2–602(B) AFFIRMED; ORDER CONSENTING TO DISMISSAL UNDER MARYLAND RULE 2–506 VACATED; APPEAL DISMISSED AS PREMATURE; CASE REMANDED TO THAT COURT FOR APPROPRIATE FURTHER PROCEEDINGS;**

**COSTS TO BE PAID BY APPELLANTS.**