United States Court of Appeals,

Fifth Circuit.

No. 91–4434.

ALLIED ELEVATOR, INC., Tom E. Cobb, Betty M. Pierce, Individually and as Independent Executrix of the Estate of Bobby G. Pierce deceased, Plaintiffs–Appellants,

v.

EAST TEXAS STATE BANK OF BUNA, Texas, Credit Guard Life Insurance Co., Defendants–Appellees.

July 13, 1992.

Appeal from the United States District Court For the Eastern District of Texas.

Before DAVIS, JONES, and E. GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants appeal the summary judgment the district court granted to the FDIC in its effort to collect on a note. We conclude that summary judgment was inappropriate because two issues of material fact were presented. We therefore reverse and remand.

I.

On February 11, 1985, Allied Elevator, Inc. (Allied) and its owner, Bobby G. Pierce, borrowed $50,000 from East Texas State Bank of Buna, Texas (Bank) and gave the Bank a promissory note in return (the Original Note). Allied and Pierce subsequently renewed the note five times, the fifth time on May 18, 1986.

During the term of the May 18 note, Pierce sold his Allied stock to Tom E. Cobb and Gary Stark. On November 18, 1986, the maturity date of the May 18 note, Pierce, Cobb, and Allied signed a new note for $50,000 (the Renewal Note). Pierce also initialed a request on the face of the note for credit life insurance. The premium for the credit life insurance was capitalized, raising the amount financed by the Renewal Note to $50,123.26.

Pierce died in January 1987, during the term of the Renewal Note. When the Renewal Note matured on February 17, 1987, no one paid the Bank. The Bank subsequently sent past-due notices to Allied. Allied refused to pay.

Allied, Cobb, and Betty Pierce, the executrix of Pierce's estate, brought suit in state court against the Bank and Credit Guard Life Insurance Co. (Credit Guard). The plaintiffs alleged that defendants had breached an agreement to provide credit life insurance and had otherwise demonstrated a lack of good faith and fair dealing. The Bank counterclaimed, seeking judgment on the Original Note against Allied and Pierce's estate.

In November 1988, the Bank failed and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. The FDIC removed the case to federal court[1] and moved for summary judgment on all claims involving the Bank, including the counterclaim. The district court granted the FDIC's motion on February 4, 1991, ordering that the plaintiffs take nothing on their claims against the FDIC and awarding the FDIC $50,000 in principal, $10,094.29 in prejudgment interest, and $19,616.44 in attorney's fees on its counterclaim. The court denied Allied and Cobb's consolidated Motion to Reconsider or Motion for New Trial on March 19, 1991. In response to an alleged error in the March 19 order, the district court issued another order on April 25, clarifying that the February 4 summary judgment in favor of the FDIC was controlling. Meanwhile, on April 11, 1991, the district court granted the FDIC's motion to sever its judgment on the counterclaim. Appellants filed their notice of appeal on May 24, 1991.

## II.

We first address our jurisdiction. The district court granted the FDIC's motion for summary judgment on February 4, 1991. This order resolved (1) the FDIC's counterclaim against Allied and

---

[1]The FDIC substituted as party in its receivership capacity in defending against plaintiffs' claims, but in its corporate capacity in its counterclaim against appellants.

Pierce's estate, and (2) plaintiffs' claims against the FDIC, but did not resolve (3) plaintiffs' claims against Credit Guard. Accordingly, the February 4 order did not dispose of all claims in the suit and was not a final judgment under Fed.R.Civ.P. 54. The FDIC, presumably recognizing that the February 4 order was non-appealable, moved on March 26, 1991 to sever its judgment on the counterclaim. The district court granted this motion on April 11, 1991, ordering that judgment on the counterclaim "is hereby severed, for which let execution issue."

Rule 21 of the Federal Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." Fed.R.Civ.P. 21. "Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neil,* 709 F.2d 361, 368 (5th Cir.1983). Although the district court did not explicitly refer to Rule 21, we conclude that the district court clearly intended to sever the judgment on the counterclaim. *Id.*

When the district court granted the motion to sever on April 11, the judgment on the counterclaim became final and appealable. Appellants filed their notice of appeal on May 24, well within the 60–day time limit applicable to cases involving an agency of the United States under Fed.R.App.P. 4(a)(1). See *Rauscher Pierce Refsnes, Inc. v. FDIC,* 789 F.2d 313 (5th Cir.1986) (FDIC is federal agency for purpose of Fed.R.Civ.P. 12(a)); *Godwin v. FSLIC,* 806 F.2d 1290, 1292 & n. 5 (5th Cir.1987) (FSLIC is federal agency under Fed.R.App.P. 4(a)). Thus we have jurisdiction over this appeal, and now proceed to the merits.

### III.

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). We review the grant of summary judgment de novo and "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *FDIC v. Laguarta,* 939 F.2d 1231, 1236 (5th Cir.1991) (citations omitted).

A.

Appellants maintain that it was error for the district court to rely on any note other than the Renewal Note as evidence of the debt owed the Bank. This is important because Pierce's request for credit life insurance is made only on the Renewal Note. The FDIC contends that it had the right to sue under the Original Note.[2] We conclude that there is an issue of material fact as to which note(s) evidence(s) the indebtedness.

Both parties agree that there is an outstanding debt and that this indebtedness has been evidenced by a sequence of promissory notes. Appellants maintain that each renewal of the note evidencing the debt canceled the preceding note; the FDIC argues contra. In Texas it is

> well settled that the giving of a new note for a debt evidenced by a former note does not extinguish the old note unless such is the intention of the parties. Nor is there a presumption of the extinguishment of the original paper by the execution and delivery of a new note. The burden of proving a novation is on the person asserting it. *Chapman v. Crichet,* 127 Tex. 590, 95 S.W.2d 360, 363 (1936).

> When renewal notes are involved, the holder may sue either on the original note or on the renewal note.

*Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 607 (Tex.App.—San Antonio 1984, writ denied

---

[2]Appellants contend that the FDIC never offered summary judgment evidence to support a claim that it is the receiver of the Bank, the liquidator of its assets, or the current holder of their promissory note. We disagree. The Bank sued to collect on the Original Note and attached a copy of that note to its First Amended Counterclaim. When the FDIC moved to substitute parties in November 1988, it alleged that it is "now the owner and holder of the note which is the subject of this suit." Appellants did not contest this motion. Then, in its motion for summary judgment on the counterclaim, the FDIC alleged that the note and accompanying affidavit attached to the counterclaim "are hereby referred to and made a part hereof as if fully copied herein *haec verba.*" Appellants now challenge the FDIC's custody and interest in the note, but offer no evidence to support this challenge. We conclude that the summary judgment evidence establishes without dispute that the FDIC is the holder of the promissory notes at issue.

n.r.e.) (citations omitted).

The Renewal Note, then, will be considered a novation, accord, satisfaction, modification, or payment of the previous notes only if appellants can show that that was the intention of the parties. Otherwise, the FDIC is free to sue on any of the notes given the Bank, including the Original Note. Appellants raise several facts to support their contention that the parties intended the Renewal Note to novate the preceding notes. We find two particularly interesting. First, appellants claim that the previous notes are stamped "CANCELLED BY RENEWAL." Second, on April 6, 1987, the Bank sent appellants a past-due notice for a note due February 17, 1987; the only note due February 17, 1987 is the Renewal Note. This evidence alone is enough to create a material issue of fact as to the parties' intent, and renders summary judgment for the FDIC inappropriate at this time. *Barnett v. Petro–Tex Chemical Corp.,* 893 F.2d 800, 810 (5th Cir.), *cert. denied,* ––– U.S. ––––, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990); Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 10A *Federal Practice and Procedure* § 2730 at 236–65, § 2730.1 at 265 (West, 2d ed. 1983); *Clark v. Pecos County State Bank,* 147 S.W.2d 917, 919 (Tex.App.—El Paso 1941). We therefore remand for further factual development on the parties' intent.[3]

## B.

The second question of fact concerns the request for credit life insurance on the face of the Renewal Note. The request was initialed "BGP" (Bobby G. Pierce) and the premium of $123.26 was capitalized. Credit Guard has refused all requests to pay the note. Appellants have sued Credit Guard over this refusal, but that claim is not part of this appeal. Appellants contend that the Bank was obligated to procure credit life insurance as requested. Appellants contend further that if the Bank failed to procure insurance, this breach relieves them of their obligation to pay the note. Thus appellants assert, as a defense to the FDIC's counterclaim, that the Bank breached a material

---

[3]If the district court determines on remand that the FDIC is entitled to sue on the Original Note, we do not consider whether appellants can still rely on the credit life provision contained in the Renewal Note as a supplement to the terms of the Original Note.

provision in the note.

"A fundamental rule of contract law is that whenever a party to a contract ... commits a material breach, the other party to that contract, at its election, is excused from further performance." *Bernal v. Garrison,* 818 S.W.2d 79, 83 (Tex.App.—Corpus Christi 1991, writ denied). Thus, if the credit life provision is a material term of the Renewal Note and the Bank is found to have breached that term, then appellants are excused from paying the amount due under the note. The district court did not consider whether the credit life provision is a material term of the Renewal Note, and neither party has briefed that issue. Accordingly, summary judgment was inappropriate and we remand for further factual development on this issue.

The FDIC suggests that a remand is unnecessary because the credit life provision is unenforceable. The FDIC makes two arguments in support of this suggestion, neither of which has merit. First, the FDIC characterizes appellants' claim of credit life insurance as involving an oral agreement and thus barred by *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). We disagree with the FDIC's characterization. The credit life provision in question is not oral; it is written on the face of the Renewal Note. Thus *D'Oench, Duhme* is inapplicable. The FDIC next refers to an alleged oral side agreement between the Bank, Allied, Cobb, and Pierce to the effect that Pierce did not actually want credit life insurance. In other words, the FDIC wishes to invoke *D'Oench, Duhme* to *enforce* this oral side agreement. The FDIC provides no authority for the novel proposition that it is entitled to rely on oral side agreements it feels protects a failed bank's depositors and creditors. Contrary to the FDIC's belief, its "special role is not all-empowering." *Matter of Still,* 962 F.2d 1177 (5th Cir.1992).

IV.

Because we conclude that material questions of fact persist (1) as to which promissory note(s) evidence(s) appellants' indebtedness, and (2) whether the credit life provision of the November 18,

1986 note is a material term and whether it was breached, we REVERSE the district court's award of summary judgment in favor of the FDIC on its counterclaim to collect on the February 15, 1985 note and REMAND to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.