947 A.2d 503

**Renee KENNEDY, Next Friend, et al.**

v.

**LASTING PAINTS, INC., et al.**

**No. 88, Sept. Term, 2007.**

Court of Appeals of Maryland.

May 7, 2008.

428

Ronald E. Richardson (Law Offices of Peter G. Angelos, Baltimore), on brief for Petitioners.

Philip H. Curtis (Nancy G. Milburn, Arnold & Porter LLP, New York City); John B. Isbister and Toyja E. Kelley, Tydings & Rosenberg LLP, Baltimore, Counsel for Atlantic Richfield Company.

Richard W. Mark, Orrick, Herrington & Sutcliffe, LLP, New York City; Raymond G. Mullady, Jr., Orrick, Herrington & Sutcliffe, LLP, Washington, DC, Counsel for American Cyanamid Company.

Peter F. Axelrad and Ronald A. Baradel, Council, Baradel, Kosmerl & Nolan, P.A., Annapolis, Counsel for The Doe Run Resources Corp., sued as St. Joe Minerals Corporation.

Michael T. Nilan (Scott A. Smith, Halleland, Lewis, Nilan & Johnson, P.A., Minneapolis, MN), Counsel for SCM Corporation.

Andrew Gendron and Matthew T. Murnane, Venable LLP, Baltimore; Carl A. Henlein and Susan S. Wettle, Frost Brown Todd LLC, Louisville, KY, Counsel for The Glidden Company.

George M. Church, Miles & Stockbridge, P.C., Baltimore; Paul M. Pohl, Charles M. Moellenberg, Jr. and Jones Day, Pittsburgh, PA, Counsel for The Sherwin–Williams Company.

James P. Ulwick, Kramon & Graham, P.A., Baltimore; Elizabeth L. Thompson, Andre M. Pauka, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL; Timothy S. Hardy, Denver, CO, Counsel for NL Industries, Inc.

Deborah L. Robinson, Robinson Woolson O'Connell, LLP, Baltimore, Counsel for Duron, Inc.

Charles S. Hirsch, Ballard Spahr Andrews & Ingersoll, LLP, Baltimore; Steven R. Williams, McGuire Woods, Richmond, VA, Coundel for E.I. duPont de Nemours & Company.

Robert H. Bouse, Anderson, Coe & King LLP, Baltimore; James R. Miller and Michael J. Sweeney, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, Counsel for PPG Industries, Inc.

Gerard P. Martin and Thy Christine Pham, Rosenberg, Martin, Greenberg, LLP, Baltimore, Counsel for Benjamin Moore & Company.

James K. Archibald, Venable LLP, Baltimore; Thomas F. Karaba, Crowley, Barrett & Karaba, Ltd., Chicago, IL, Counsel for Fuller–O'Brien Corporation.

William C. Parler, Jr., Parler & Wobber, LLP, Towson, Counsel for Valspar Corporation.

Frank F. Daily (Law Offices of Frank F. Daily, P.A., Hunt Valley), for Respondents.

Argued before BELL, C.J.* RAKER, HARRELL, BATTAGLIA, GREENE, MURPHY, DALE R. CATHELL, (Retired, specially assigned), JJ.

HARRELL, Judge.

## I.

Nearly ten years ago, seven minor plaintiffs (Reginald Smith, Jr., Shatara Smith, Shatavia Smith, Christian Brantley, Brandon Hamilton, Gerald Shorter, and Octavia Shorter) from four families (the Smiths, the Brantleys, the Hamiltons, and the Shorters) filed a complaint in the Circuit Court for Baltimore City. Based on exposure to the element, lead, these four families sought to recover damages from twenty-one

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

defendant companies on varied products liability-related claims.[1] The fifteen-count complaint, filed 20 September 1999, alleges that the defendant companies are liable to the plaintiffs because they either 1) produced tetraethyl lead (TeL) used in motor vehicle gasoline;[2] 2) produced lead pigment used in manufacturing paint; 3) produced paint that contained the lead pigment;[3] 4) produced lead-free paint without warning consumers on the containers how to remove safely previously applied lead paint in the surface preparation instructions; or 5), in the case of two trade organization defendants, allegedly promoted the use and unsafe removal of lead paint.

In 2005, this Court considered an earlier appeal in this matter, *Smith v. Lead Indus. Ass'n, Inc.*, 386 Md. 12, 871 A.2d 545 (2005). The relevant procedural history from our opinion in Smith is worthy of reiteration here:

Early in the proceeding, the plaintiffs moved to sever the action into four separate cases, one for each family, or, in the alternative, to allow them to dismiss the action without prejudice in order that separate actions could be brought. The court denied that relief. Instead, it treated the motion as one for separate trials pursuant to Maryland Rule 2–503(b)[4] and granted that relief. In a subsequent pre-trial

---

1. Specifically, plaintiffs alleged "conspiracy, concert of action and aiding and abetting tort liability, negligent product design, negligent failure to warn, supplier negligence, strict liability [for] defective design, strict liability [for] failure to warn, commercial seller or distributor liability, conscious misrepresentation involving risk of physical harm, negligent misrepresentation involving risk of physical harm and fraud by concealment in tort, fraud by misrepresentation in tort[, and violation of] the Maryland Consumer Protection Act."

2. The phase-out of leaded gasoline began in the 1970s. U.S. Envtl. Prot. Agency, Press Release: EPA Takes Final Step in Phaseout of Leaded Gasoline (29 Jan. 1996). Lead as an additive to gasoline was banned altogether on 1 January 1996. *Id.*

3. "The federal government banned lead-based paint from housing in 1978." U.S. ENVTL. PROT. AGENCY, LEAD IN PAINT, DUST, AND SOIL: BASIC INFORMATION http://www.epa.gov/lead/pubs/leadinfo.htm (last visited 17 March 2008).

4. Rule 2–503(b) states:

scheduling order, the court set four separate trial dates—one for the Smith children, one for the Brantley child, one for the Hamilton child, and one for the Shorter children—and established different discovery schedules with respect to the quadrifurcated claims. Although that scheduling order was amended from time to time, the question of severance was never revisited, and the case proceeded in accordance with the ruling denying the motion for severance but granting separate trials on a per family basis. The effect of the court's ruling was to maintain the action as a unitary one, involving all plaintiffs against all defendants. . . .

The case then proceeded with a blizzard of motions to dismiss and for summary judgment, which ultimately were granted, in whole or in part. In August, 2001, the court denied a motion by Duron, Inc. to dismiss Count I of the Third Amended Complaint but "reassigned" Counts I, II, and III (Conspiracy, Concert of Action, and Aiding and Abetting) as part of the descriptive "Nature of the Action" appearing in preliminary paragraphs. The effect of that order was to dismiss those counts as substantive causes of action at least as to Duron.

On October 24, 2001, the court granted a motion for summary judgment in favor of Lasting Paints, Inc. "against the plaintiffs." The order granting the motion (1) is not in the record, although a copy was included in the record extract, and (2) was never docketed in this action. It appears to apply to the six plaintiffs then in the case. One child, Shatavia Smith, did not join the case as a plaintiff until a month later, and the order was never extended to include her. A motion by the plaintiffs to reconsider the granting of Lasting Paints' motion was denied.

---

In furtherance of convenience or to avoid prejudice, the court, on motion or on its own initiative, may order a separate trial of any claim, counterclaim, cross-claim, or third-party claim, or of any separate issue, or of any number of claims, counterclaims, cross-claims, third-party claims, or issues.

The next day, October 25, 2001, the court granted a motion for partial summary judgment in favor of American Cyanamid Company. That company was sued in two capacities-for its own conduct and as a successor-in-interest to John R. MacGregor Lead Company. The motion and the order granting it addressed only the successor-in-interest liability, which is why it was labeled a partial summary judgment. As with the grant of Lasting Paints' motion, it went against only the six plaintiffs then in the case, not Shatavia Smith, who was added a month later.

In February, 2002, the court dismissed (1) Counts IV through XV against PPG Industries, Inc. (PPG), E.I. DuPont de Nemours & Company (DuPont), and Ethyl Corporation with respect to the TeL claims made against them, (2) those same counts against Atlantic Richfield Company (Atlantic Richfield), NL Industries, Inc. (NL), SCM Corporation (SCM), Glidden Corporation (Glidden), The Sherwin–Williams Company (Sherwin–Williams), American Cyanamid Company (American Cyanamid), and Fuller–O'Brien Corporation (Fuller–O'Brien) with respect to the lead pigment claims made against them, (3) those counts generally against National Paint and Coatings Association (NPCA) one of the two trade associations, (4) Counts V, VIII, and XI through XV against Lead Industries Association, Inc. (LIA), the other trade association, and (5) Counts XI through XIV—the fraud counts—against all defendants. A week later, the court dismissed all remaining counts as to Atlantic Richfield and American Cyanamid and all counts as to ASARCO, Inc. and Doe Run Resources.

That left Counts IV through X and XV (Alternative Liability, Negligent Product Design, Negligent Failure to Warn, Supplier Negligence, Strict Liability/Defective Design, Strict Liability/Failure to Warn, Commercial Seller Liability, and Consumer Protection Act) alive against ten paint manufacturing defendants (Sherwin–Williams, SCM, Glidden, DuPont, Fuller–O'Brien, PPG, Valspar Corporation, Benjamin Moore & Company, and Duron, Inc.) and Counts IV, VI, VII, IX, and X alive against LIA.

On November 15, 2002, the court granted summary judgment on Counts IV through X and XV in favor of all defendants except Fuller–O'Brien and LIA, but only as to the Smith plaintiffs. On November 21, it granted summary judgment to Fuller–O'Brien on those counts, but, as Fuller–O'Brien's motion went to "all plaintiffs," presumably the judgment did as well. That was the last order entered by the Circuit Court. On December 10, 2002, all of the plaintiffs filed an appeal "from all appealable Orders, including but not limited to the final judgments entered on November 15, 2002."

The Court of Special Appeals, in an unreported opinion, recognized that there was no final judgment in the case in that many of the counts against many of the defendants were still unresolved with respect to the Brantley, Hamilton, and Shorter plaintiffs. It assumed, however, that all claims against all defendants had been finally resolved with respect to the Smith children, and concluded, as a result, that "to condition the Smith appeal upon the entry of final judgment in the claims brought by the other plaintiffs would be inefficient, at best, and possibly foolish." That was so, it said, because the facts for each family of plaintiffs were different and because a decision in the Smith appeal might clarify issues that remain in the other cases. On that ground, the intermediate appellate court, invoking Maryland Rule 8–602(e)(1)(C),[5] purported to enter final judgment on the Smith claims and proceeded to address the substantive issues presented in the appeal.

The Court of Special Appeals affirmed the trial court's grant of summary judgment with respect to the fraud, negligent misrepresentation, and intentional concealment

---

**5.** Rule 8–602(e)(1)(C) reads:

If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, ... enter a final judgment on its own initiative....

claims on the ground that the plaintiffs failed to produce sufficient evidence of reliance on their part, which the appellate court held was necessary to establish liability. The court also agreed that the manufacturers of non-lead-based paint had no duty to warn the plaintiffs of the hazards associated with the removal of lead paint, not made by them, when preparing the surface for repainting. The court found no duty owing to the plaintiffs by the two trade associations. The one area in which the appellate court disagreed with the trial court concerned the liability of the defendants that produced lead pigment and lead paint— claims of alternative liability, negligent product design, supplier negligence, strict liability for defective design, and liability of commercial sellers for harm caused by products into which harmful components are integrated. Judgments with respect to those claims against those defendants were reversed and the case was remanded for further proceedings.

*Id.* at 17–21; 871 A.2d at 547–50 (original footnotes omitted).

We determined in *Smith* that the Court of Special Appeals erroneously invoked Maryland Rule 8–602(e)(1)(C), on its initiative, to render a final judgment as to less than all claims by all of the parties. *Id.* at 22, 871 A.2d at 551. In reaching this conclusion, we noted that all the claims by the Smith plaintiffs against all of the defendants had not been resolved due to the automatic stay that accompanied the filing for bankruptcy protection by Lead Industries Association, Inc. (LIA).[6] We noted that a final judgment could not be entered unless LIA was severed as a defendant because, "given the nature of the allegations against LIA, that would have amounted to splitting a single claim, which is not allowed." *Id.* at 23, 871 A.2d at 551. Further, final judgment could not be entered because the 24 October 2001 order granting summary judgment in favor of Lasting Paints was never docketed (thus it did not have the status of a judgment) and did not include Shatavia

---

**6.** LIA is one of the defendant trade organizations.

Smith's claims, as she was not yet a party.[7] The Court observed that side-stepping these issues was contrary to established case law in which we "made quite clear" that discretion to allow an appeal by entering a final judgment as to less than all of the claims or parties "was to be reserved for the 'very infrequent case.'" *Id.* at 24, 871 A.2d at 552 (quoting *Diener Enters. v. Miller,* 266 Md. 551, 555–56, 295 A.2d 470, 473 (1972)).

We also discussed Maryland Rule 2–602,[8] the rule that grants to trial courts the authority to enter a final judgment as to less than all the parties or claims. As a policy underpinning, the rule, despite its authorization, is intended to prevent piecemeal appeals, which we noted are "inefficient and costly [and] can create significant delays, hardship, and procedural problems." *Smith,* 386 Md. at 25, 871 A.2d at 553. On the other hand, "the infrequent harsh case" may justify departing from the usual rule where the record "'establishes the existence of any hardship or unfairness which would justify discretion[ ].'" *Id.* at 25–26, 871 A.2d at 552–53 (quoting *Diener Enters.,* 266 Md. at 555–56, 295 A.2d at 473). We also considered Maryland Rule 8–602(e), which permits an appel-

---

7. The same was true of the partial summary judgment granted in favor of American Cyanamid dated 25 October 2001.

8. Maryland Rule 2–602 states that:
   (a) Generally. Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
   (1) is not a final judgment;
   (2) does not terminate the action as to any of the claims or any of the parties; and
   (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
   (b) When Allowed. If the court expressly determines that there is no just reason for delay, it may direct in the order the entry of a final judgment:
   (1) as to one or more but fewer than all of the claims or parties; or
   (2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

late court to enter judgment if the trial court properly could have done so under Rule 2–602(b), but noted its even more limited application. *Smith*, 386 Md. at 25, 871 A.2d at 553. We concluded that "[t]he decision of the Court of Special Appeals to enter judgment under Rule 8–602(e) avoided neither inefficiency nor foolishness .... [and] delayed resolution of the claims of the other plaintiffs for more than a year." *Smith*, 386 Md. at 27, 871 A.2d at 553–54. By inappropriately allowing a premature appeal, the Court of Special Appeals increased the uncertainty of unresolved claims and enabled at least one, and perhaps three, additional appeals as the other families' claims were resolved. *Id.*, 871 A.2d at 553. We vacated the judgment of the Court of Special Appeals and remanded the case to that court with instructions to dismiss the appeal. *Id.*, 871 A.2d at 554.

Returning to the Circuit Court, the plaintiffs, on 2 September 2005, filed a "Motion for Entry of Final Judgment Consistent with the Maryland Court of Appeals' Opinion and Mandate." In the motion, they submitted that this Court

> stated that the Smith plaintiffs are unable to appeal final judgments relating to them unless, and until, the other plaintiffs' cases have been severed or dismissed. To that end, plaintiffs have simultaneously filed a Motion to Sever and to Stay, which, in part, seeks to sever the cases of Brandon Hamilton, Christian Brantley, and Gerald and Octavia Shorter from the cases of Reginald, Shatara[,] and Shatavia Smith.... Many, if not all, of the issues to be appealed in connection with the *Smith* plaintiffs are directly relevant and pertinent to the other four cases. Therefore, plaintiffs further request in said Motion that this Court stay the cases of Brandon Hamilton, Christian Brantley[,] and Gerald and Octavia Shorter pending the resolution of the Smith cases' appellate process .... [9]

---

**9.** The motion also contained six sections addressing the points in *Smith* where it was noticed that multiple issues remained outstanding as to the Smith plaintiffs:

2. The Court of Appeals was concerned that this Court's Order reassigning Counts 1–3 into the "Nature of the Action" applied only to defendant Duron and not to all parties. To resolve this concern, plaintiffs respectfully request that this Court enter and docket an Order, attached hereto as Exhibit 4, reassigning these Counts of the Third Amended Complaint into the "Nature of the Action" section applicable to all parties;

3. It was always plaintiffs' understanding that this Court intended that its Order granting Lasting Paints' Motion for Summary Judgment was applicable to all three of the Smith cases. However, the Court of Appeals determined that said Order was never docketed and applied only to Reginald and Shatara Smith. Therefore, to further this Court's intention, plaintiffs respectfully request that this Court clarify its ruling by entering and docketing an Order, attached hereto as Exhibit 4, applying this Court's ruling on Lasting's Motion for Summary Judgment to Reginald, Shatara[,] and Shatavia Smith;

4. Plaintiffs also understood that it was this Court's intention that its Order granting American Cyanamid's Partial Motion for Summary Judgment applied to all three of the Smith cases. However, the Court of Appeals again determined that this Court's Order applied only to Reginald and Shatara Smith. Therefore, to further this Court's intention, plaintiffs respectfully request that this Court clarify its ruling by entering and docketing an Order, attached hereto as Exhibit 4, applying the Court's ruling on American Cyanamid's Partial Motion for [Partial] Summary Judgment to Reginald, Shatara[,] and Shatavia Smith;

5. The Court of Appeals stated that it was unclear whether this Court's November 15, 2002 Order applied to defendants Fuller–O'Brien and Lead Industries Association. As a consequence, plaintiffs respectfully request that this Court enter and docket an Order, attached hereto as Exhibit 4, which clearly states that its ruling, as set forth in its November 15, 2002 Order, is applicable to all defendants. To the extent defendant Fuller–O'Brien did not adopt defendants' Motions for Summary Judgment as to Product Identification or file its own Motion on this issue, plaintiffs stipulate that this Court's Order will be applicable to Fuller O'Brien as well. As a result, plaintiffs submit that there will be no need to address this Court's November 21, 2002 Order which sought only to include Fuller–O'Brien in its previous order;

6. The Court of Appeals was also of the opinion that this Court's February 14, 2002 Order did not apply to the trade association defendants; namely, the Lead Industries Association (LIA) and the National Paint Coatings Association (NPCA). To the extent it was this Court's intention to include these defendants in its Order, plaintiffs request that this Court enter and docket an Order establishing that its February 14, 2002 Order applies to all parties. A proposed Order is attached as Exhibit 4; and

7. The Court of Appeals held that, in light of the LIA's bankruptcy, the Smith plaintiffs' cases will never be ripe for appeal unless plaintiffs' claims as against the LIA are severed. Plaintiffs note that, in the interim, defendant ASARCO has also filed for bankruptcy. As a result, the above-referenced Motion also seeks to have all seven

Concurrently with the motion for final judgment, the plaintiffs filed a "Motion to Sever and to Stay." The Motion posited that "the facts associated with each family are unique, distinguishable[,] and are not in any way related to each other." Plaintiffs then reiterated their view of *Smith's* directions:

5. The Maryland Court of Appeals has determined that, by denying plaintiffs' Motion to Sever, there can be no finality of judgments as to plaintiffs Reginald, Shatavia[,] and Shatara Smith until all seven cases have been finalized. It stated that only by severing the Smith plaintiffs' cases from those of Brandon Hamilton, Christian Brantley[,] and Gerald and Octavia Shorter can the judgments entered by this Court in the Smith cases be final. To that end, plaintiffs respectfully request that [this] Court grant this Motion to Sever the cases of Brandon Hamilton, Christian Brantley[,] and Gerald and Octavia Shorter from those of Reginald, Shatavia[,] and Shatara Smith;

6. As the judgments entered in the Smith plaintiffs' cases were directly relevant and applicable to all plaintiffs' cases, judicial economy dictates that the four remaining cases be stayed pending the appeal of the Smith cases. Plaintiffs respectfully request that this Court grant this Motion to the extent it seeks to stay the remaining four plaintiffs' cases pending the appeal of the three Smith plaintiffs' cases;

7. Finally, the Court of Appeals determined that, upon the filing of bankruptcy by defendant LIA, all plaintiffs' claims, but particularly those claims of the Smith plaintiffs, as against that defendant must be severed before any judgments entered in their cases will be final. This same reasoning would also apply to the subsequent filing for bankruptcy by defendant ASARCO. Plaintiffs, therefore, respectfully request that [this] Court grant plaintiffs' motion to sever all plaintiffs' claims as against bankrupt defendants

---

plaintiffs' claims as against bankrupt defendants Lead Industries Association and ASARCO, severed from their cases against the remaining Defendants.

LIA and ASARCO. All plaintiffs will pursue claims against the remaining defendants in each respective case.

Defendants vigorously opposed plaintiffs' motions, asserting that *Smith* is devoid of any indication that an appeal would be appropriate if the various plaintiffs' claims were severed. The companies argued that "the Court of Appeals could not possibly have made such a statement without overruling *Blades [v. Woods*, 338 Md. 475, 659 A.2d 872 (1995) ], and it is impossible to read the Court of Appeals decision as overruling *Blades* because it cites and relies on *Blades. . . . Smith, supra,* 386 Md. at 17, 871 A.2d 545." [10]

On 6 and 21 February 2006, the trial judge granted plaintiffs' Motion to Sever and Stay and plaintiffs' Motion for Entry of Final Judgment, respectively. Believing that these two orders created a final appealable judgment within the meaning of Maryland Rule 2–602, the Smith plaintiffs [11] again appealed

---

**10.** This statement is, in part, overreaching. We cited *Blades* in *Smith* in our discussion of plaintiffs' earlier attempt at severance. We relied on *Blades* for the principle that a severance under Maryland Rule 2–503(b) (the relief granted petitioners prior to *Smith)* does not create separately appealable actions, although it permits separate trials. *Smith,* 386 Md. at 17, 871 A.2d at 547. *Blades* solely addresses a Rule 2–503 severance. *See Blades v. Woods,* 338 Md. 475, 659 A.2d 872 (1995).

*Blades* exemplifies a common confusion between a Rule 2–503(b) severance and a Rule 2–213 severance. We hinted at the distinction between the two in *Smith,* noting that "the plaintiffs moved to sever the action into four separate cases . . . or, in the alternative, . . . to dismiss the action without prejudice in order that separate actions could be brought. The court denied that relief [and i]nstead . . . treated the motion as one for separate trials pursuant to Maryland Rule 2–503(b) and granted that relief." 386 Md. at 17, 871 A.2d at 547–48. In federal courts, confusion between the federal analogues to these rules (Federal Rule of Civil Procedure 42(b) and Federal Rule of Civil Procedure 21) caused similar problems. "Use of the term 'severance' to denote separation of trials under Rule 42(b), not resulting in discrete, separately appealable actions, sometimes masks the point [that severance under Rule 21 creates such actions]." *Spencer, White, & Prentis, Inc. of Conn. v. Pfizer, Inc.,* 498 F.2d 358, 362 n. 9 (2d Cir.1974). "While application of Rule 42(b) involves primarily the consideration of convenience and fairness, that of Rule 21 also presupposes basic conditions of separability in law and logic." *Id.* at 362.

**11.** During the course of litigation, the case caption was changed to reflect the last name of Renee Kennedy, mother and next friend of the Smith children.

to the Court of Special Appeals. Defendants countered that the extant judgments remained not properly appealable because a number of claims made by the other three families were outstanding. Agreeing with the arguments of the defendant companies, the intermediate appellate court, in an unreported opinion, held that "[n]one of the various orders docketed in the Circuit Court in this case, either individually or collectively, resolved all claims against all parties." The court found that the Smith plaintiffs mischaracterized this Court's judgment in *Smith.* The court concluded:

> If the circuit court believed that a piecemeal appeal was justified in this case where claims by various plaintiffs have not been resolved as to many defendants, it should have signed an appropriate Rule 2–602(b) order finding that there was "no just reason" for delay of the appeal. But based on what was said in *Smith* . . ., it is unlikely that we would have upheld such an order.

We granted certiorari (402 Md. 352, 936 A.2d 850 (2007)) to consider first whether the Circuit Court's two orders created final, appealable judgments as to the Smith plaintiffs (Petitioners), and, if able to answer that in the affirmative, determine whether the trial court committed reversible error by dismissing: 1) Petitioners' fraud and misrepresentation claims against Respondents for failure to allege reliance upon the alleged fraudulent behavior; 2) Petitioners' product design defect, negligence, and strict liability claims concerning the manufacture, sale, and distribution of lead-based pigments; and 3) Petitioners' claims against various companies because their surface preparation instructions did not address the safe removal of lead-based paint.

## II.

### A.

Petitioners asserted before the Circuit Court and Court of Special Appeals that we, in *Smith,* encouraged the severance granted in the trial court on remand, without the necessity of further action on the merits of the other plaintiffs' claims that

remained unresolved at the time of *Smith.* As that assertion aptly was critiqued by the Court of Special Appeals in its unreported opinion here, "[n]owhere in that opinion *[Smith]* did [the Court of Appeals] either say or suggest 'that the Smith plaintiffs are unable to appeal final judgments relating to them unless, and until, the other plaintiffs' cases have been severed or dismissed.'" In discussing whether the trial court might enter a Rule 2–602(b) final judgment for the purposes of an immediate appeal by the Smith plaintiffs, we noted that any bankrupt defendants would need to be severed. *Smith,* 386 Md. at 23, 871 A.2d at 551. This statement is inapposite, however, as to the motion to sever the claims of the Smith plaintiffs from those of the other plaintiffs. In any event, the Circuit Court erred in granting the motion.

The pertinent Maryland procedures, styled after Federal Rules of Civil Procedure 20 and 21, for joinder and misjoinder in Maryland are Maryland Rules 2–212[12] and 2–213.[13] Rule 2–212 permits joining parties in one action as plaintiffs or defendants if the rights asserted are to "relief jointly, severally, or in the alternative in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons [or against all defendants] will arise in the action." From a policy standpoint, "rules permitting the joinder of multiple parties and claims [were] to

---

12. Rule 2–212 states, in relevant part:
   (a) When Permitted. All persons may join in one action as plaintiffs if they assert a right to relief jointly, severally, or in the alternative in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action.

13. Rule 2–213 notes:
   Misjoinder of parties is not ground for dismissal of an action. So long as one of the original plaintiffs and one of the original defendants remain as parties to the action, parties may be dropped or added (a) by amendment to a pleading pursuant to Rule 2–341 or (b) by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

remedy the procedural and substantive defects in the law which prevented the resolution in one action of the rights and obligations of all parties whose connection with the case arose out of the same source and occurrence." *Great Atl. & Pac. Tea Co. v. Royal Crown Bottling Co.*, 243 Md. 280, 287, 220 A.2d 598, 601–02 (1966). The criteria for permissive joinder, as well as the procedure when joinder is improper, are discussed in Niemeyer & Schuett's *Maryland Rules Commentary*:

*Criteria for permissive joinder.*

Permissive joinder may be allowed when two conditions are shown: (1) the issues in the litigations arise out of the same transaction, occurrence, or series of transactions, and (2) there is a common question of law or fact with respect to all or part of the action. The core purpose of the rule is to permit a single trial of claims having a similar foundation or similar issues. *See, e.g., Garay v. Overholtzer*, 332 Md. 339, 631 A.2d 429 (1993) (parents' claim for medical expenses for child *may* be brought in same actions with minor's claim for personal injuries).

The similarities of the claims of the persons joined need not be total. The rule envisions the possibility that, when judgments are entered on joined claims, they may be favorable to one defendant and unfavorable to another, or favorable to one plaintiff and unfavorable to another, depending on the individual factual circumstances of each party joined. In other words, the rule is not so restrictive that joinder may be employed only when the results on all claims would be the same. It is a rule to facilitate trying similar issues at the same time in the discretion of the court.

*Procedure when joinder improper.*

Persons who are joined as authorized by this rule ... may seek protection from the joinder under this rule or other rules. The court ... may order that parties be dropped because of a misjoinder under Rule 2–213; or the court may order a severance under Rule 2–503(b).

PAUL D. NIEMEYER & LINDA M. SCHUETT, MARYLAND RULES COMMENTARY 143–44 (3d ed.2003).

▮ Rule 2–213 permits dropping parties and severing claims as a remedy for misjoinder and grants a trial court discretion to do so on its motion or on motion of a party. Niemeyer & Schuett's *Commentary* suggests that:

Parties are misjoined when the claims or obligations of two or more defendants or two or more plaintiffs should not be tried together as measured against the criteria set forth in Rule 2–212. When either the issues do not arise out of the same transaction, occurrence, or series of transactions, or there is no common question of law or fact, there may be a misjoinder. The rule expressly provides that an action is not to be dismissed for misjoinder. Instead, the misjoinder should be corrected in one of two ways. If at all possible, the parties should correct the misjoinder without the necessity of court involvement through amendment of the pleadings as permitted by Rule 2–341. If court involvement is necessary, the court upon motion or on its own initiative may order that the misjoined party be dropped under this rule; or it may enter a special order under Rule 2–212(b); or it may order separate trials under Rule 2–503(b).[14]

NIEMEYER & SCHUETT, *supra* at 145.

Petitioners essentially argue that the four families in this case were misjoined, alleging distinct particularized circumstances leading to lead exposure regarding each family's bundle of claims. Before *Smith*, the plaintiffs moved to sever the claims of each of the four families into separate actions. That motion to create separate actions was denied by the trial court and, instead, the court ordered separate trials for each family as part of a single action, under Maryland Rule 2–503(b).

---

**14.** Rule 2–503(b) reads, in pertinent part:

In furtherance of convenience or to avoid prejudice, the court, on motion or on its own initiative, may order a separate trial of any claim, counterclaim, cross-claim, or third-party claim, or of any separate issue, or of any number of claims, counterclaims, cross-claims, third-party claims, or issues.

Petitioners distinguish their post-*Smith* motion for severance, asserting that this time the Circuit Court created completely separate actions.

### B.

There is some merit to Petitioners' argument that the trial court had the ability to sever actions in this way. As previously mentioned, Rule 2–213 is styled after Federal Rule of Civil Procedure 21. The Maryland Rules cite the Federal Rule as the source from which 2–213 was derived, and the *Maryland Rules Commentary* notes that

> [t]his rule, adopted in 1984, is derived from the then existing version of [Federal Rule of Civil Procedure] 21 and may be construed by the principles developed under the federal rule. The only difference between this rule and the federal rule is the restriction made explicit in the second sentence of this rule that dropping any party or adding any party is subject to the restriction on amendments contained in Rule 2–341(c)(5) [requiring that at least one of the original plaintiffs and one of the original defendants remain party to the action].

NIEMEYER & SCHUETT, *supra* 144; *see also* Maryland Rule 2–213 ("Source.—This Rule is derived from the 1937 version of Fed.R.Civ.P. 21."); *Burns v. Scottish Dev. Co.*, 141 Md.App. 679, 712, 787 A.2d 786, 805 (2001) (Rule 2–213 is derived from Fed. R. Civ. Pr. 21 . . . . ).

█ A properly granted severance under Federal Rule of Civil Procedure 21 creates separate and independent suits. In *United States v. O'Neil*, 709 F.2d 361, 366 (5th Cir.1983), the district court ordered that "[t]he defendants' counterclaim against the plaintiff is severed from the cause of action alleged by plaintiff and will be tried separately and at a later date." The Fifth Circuit Court of Appeals described the effect of the severance:

> Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete,

independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other.

*O'Neil,* 709 F.2d at 368.

Where Maryland law is wanting of discussion of the effects of a Rule 2–213 severance,[15] federal law is replete with cases like *O'Neil. See, e.g., Allied Elevator, Inc. v. East Texas State Bank of Buna,* 965 F.2d 34, 36 (5th Cir.1992) (" 'Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other.' " (quoting *O'Neil,* 709 F.2d at 368)); *Spencer, White, & Prentis, Inc. of Conn. v. Pfizer, Inc.,* 498 F.2d 358, 361–62 (2d Cir.1974) ("We [recognize] that a claim ... properly severed from another by virtue of Rule 21 may be proceeded with separately; ... that appeal from a judgment on a validly severed single claim may be timely taken as of right notwithstanding the pendency of the remaining claims ...." (internal citations omitted)); *German by German v. Fed. Home Loan Mortg. Corp.,* 896 F.Supp. 1385, 1400 n. 6 (S.D.N.Y.1995) (noting that severance, unlike separate trials in the same case, results in two judgments); *Am. Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 190 (D.Virgin Islands 1975) (invoking Federal Rule of Civil Procedure 21 to sever claims of various parties into two distinct actions that would proceed individually).

---

**15.** Maryland cases have discussed Maryland Rule 2–213 in a very limited way. *See Fish Market Nominee Corp. v. G.A.A., Inc.,* 337 Md. 1, 14, 650 A.2d 705, 711 (1994) (noting that dismissal is not the proper remedy for misjoinder); *Gress v. ACandS, Inc.,* 150 Md.App. 369, 380 n. 6, 820 A.2d 616, 622 n. 6 (2003) (same), *rev'd on other grounds sub nom Brown & Williamson Tobacco Corp. v. Gress,* 378 Md. 667, 838 A.2d 362 (2003); *Burns v. Scottish Dev. Co.,* 141 Md.App. 679, 712, 787 A.2d 786, 805 (2001) (noting that a trial court *sua sponte* may realign parties under the Rule).

In the federal courts, certain considerations ordinarily must be pondered before a severance may be ordered under Federal Rule of Civil Procedure 21. In *German by German*, a case where the plaintiffs alleged that they were exposed to lead at their residence, the trial court was encouraged to sever claims against certain defendants from those against other defendants in the case. 896 F.Supp. at 1400. The U.S. District Court for the Southern District of New York noted that "[i]n deciding whether severance is appropriate, courts generally consider (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted." *Id.* The court denied the Rule 21 motion for severance, noting:

At this point, severing the Plaintiffs' claims against the 1710 Defendants would neither serve the interests of justice nor further the prompt and efficient resolution of this litigation. There are numerous questions of law and fact common to the German Plaintiffs' claims against the 1710 Defendants and against the other defendants. . . .

Proof of many of these points as they pertain to the 1710 Defendants likely will in significant part require the testimony of the same witnesses and presentation of the same evidence as will be required in proving them against the other defendants. To require the German Plaintiffs to prove these points at separate trials ... would be repetitious, prolong the ultimate termination of this litigation, and place an unnecessary burden on the German Plaintiffs. In addition, severance of the claims against the 1710 Defendants would pose a significant danger of inconsistent judgments in the separate actions.

Balanced against these concerns, the danger that the 1710 Defendants will be prejudiced by having the German Plaintiffs' claims against them litigated in the same action as the

claims against the other defendants is relatively insubstantial.

*Id.* at 1400–01.

In *Spencer, White, & Prentis, Inc.*, the plaintiff appealed from a summary judgment entered by the district court. 498 F.2d 358. The district court, as part of the order granting summary judgment, severed other claims finding that "a severance will both serve the ends of justice and further an efficient disposition of the litigation." *Id.* at 359. On appeal, the Circuit Court of Appeals for the Second Circuit outlined considerations that must precede severance under Rule 21. *Id.* at 362. To avoid abuse of discretion, the trial court must consider convenience, fairness, and "separability in law and logic." *Id.* The appeals court found that the circumstances in *Spencer, White, & Prentis, Inc.* justified, at best, separate trials, rather than severed actions.[16] *Id.* The court held, "[w]e . . . conclude that the 'severance' was so transparently . . . an attempt to separate an essentially unitary problem, that it should be disregarded out of hand as devoid on its face of any foundation for appellate jurisdiction or, at least, an abuse of discretion with the same result." *Id.*

## C.

The considerations highlighted in *Spencer, White, & Prentis, Inc.* and *German by German* before a severance may be deemed proper are similar to those that prevent circumvention of the final judgment principle in Maryland. " '[T]he right to seek appellate review ordinarily must await the entry of a final judgment, disposing of all claims against all parties,' " unless one of three narrow exceptions applies. *Smith,* 386 Md. at 21, 871 A.2d at 550 (quoting *Shoemaker v. Smith,* 353 Md. 143, 165, 725 A.2d 549, 560 (1999)); *see also Silbersack v. ACandS, Inc.,* 402 Md. 673, 678, 938 A.2d 855, 857–58 (2008); *Hudson v. Hous. Auth. of Balt. City,* 402 Md. 18, 24–

---

**16.** A federal district court also may order separate trials under Federal Rule of Civil Procedure 42(b), which is analogous to Maryland Rule 2–503(b).

25, 935 A.2d 395, 398–99 (2007). The exceptions are "appeals from interlocutory rulings specifically allowed by statute (Maryland Code [ 1974, 2006 Repl.Vol., Courts & Judicial Proceedings], § 12–303), immediate appeals permitted under Maryland Rule 2–602(b), and appeals from interlocutory rulings allowed under the common law collateral order doctrine." *Smith,* 386 Md. at 21, 871 A.2d at 550.

In *Smith,* we discussed, for purposes of an appeal under Maryland Rule 2–602(b), the considerations that must accompany entry of a final judgment on less than all claims. We noted that entry of a judgment under 2–602(b) must be supported by facts in the record that establish " 'the existence of a hardship or unfairness which would justify discretionary departure from the usual rule establishing the time of appeal.' " *Smith,* 386 Md. at 24–25, 871 A.2d at 552 (quoting *Diener Enters.,* 266 Md. at 555, 295 A.2d at 473). We stated that

> [t]he purpose of Rule 2–602(a) is to prevent piecemeal appeals, which, beyond being inefficient and costly, can create significant delays, hardship, and procedural problems. The appellate court may be faced with having the same issues presented to it multiple times; the parties may be forced to assemble records, file briefs and record extracts, and prepare and appear for oral argument on multiple occasions; resolution of the claims remaining in the trial court may be delayed while the partial appeal proceeds, to the detriment of one or more parties and the orderly operation of the trial court; and partial rulings by the appellate court may do more to confuse than clarify the unresolved issues.

*Id.* at 25–26, 871 A.2d at 553.

In *Silbersack v. ACandS, Inc.,* 402 Md. 673, 938 A.2d 855 (2008) and *Collins v. Li,* 158 Md.App. 252, 857 A.2d 135 (2004), this Court and the Court of Special Appeals, respectively, discussed circuit court denials of requests for entry of judgment under Rule 2–602(b). In each case, the appealing party

sought to out-flank the final judgment rule. In *Silbersack*, we noted that

> [e]ven if there were a case in which the denial by a circuit court of a request to enter judgment under Rule 2–602(b) could be regarded as a final judgment for purposes of allowing an immediate appeal, this is not that case. As to appellants' request that the court "administratively" dismiss the bankrupt asbestos defendants, subject to their being reinstated if and when they emerge from bankruptcy, we note only that we are unaware of any such procedure of "administrative" dismissal subject to reinstatement. For one thing, if the dismissal is for the purpose of allowing a final judgment to be entered, there would be no case left to which the dismissed defendants could be rejoined or reinstated. Moreover, although proceedings against a defendant can be stayed for one reason or another, we have never created any kind of mystic "never-never land" where a defendant is both in and not in a case. Suspended animation does not go that far.

*Silbersack*, 402 Md. at 687, 938 A.2d at 863. In *Collins*, the intermediate appellate court wrote:

> "In the present case the parties wish to challenge on appeal issues that are still within the lawsuit and, if successful, challenge them again in further litigation. This approach defeats the very purpose of finality.... Consequently, it is clear that the order is not final and that only a partial judgment has been rendered from the previous proceedings. Under the circumstances, the court has no alternative other than to dismiss the appeal as lacking finality in the judgment."

*Collins*, 158 Md.App. at 269, 857 A.2d at 145 (quoting *Orion Fin. Corp. of S.D. v. Am. Foods Group, Inc.*, 201 F.3d 1047 (8th Cir.2000)); *see also Crowder v. Master Fin., Inc.*, 176 Md.App. 631, 644, 933 A.2d 905, 913 (2007) ("In *Collins*, we focused on the appellants' undisguised intent to use voluntary dismissals as a vehicle for obtaining an advisory opinion from this Court and then later resurrect the dismissed claims in circuit court." (citing *Collins*, 158 Md.App. at 273–74, 857 A.2d

135, 147–48)). The panel in *Collins* reasoned that, " '[i]f a 'voluntary dismissal exception' were to provide a mechanism for securing appellate review of any trial court order, the 'exception' would quickly subsume the rule, and we would be left without any meaningful way to regulate interlocutory appeals.' " *Collins,* 158 Md.App. at 273, 857 A.2d at 147 (quoting *Smith v. Lincoln Meadows Homeowners Ass'n, Inc.,* 267 Neb. 849, 678 N.W.2d 726, 732 (2004)). The court concluded that "[t]he final judgment rule cannot be circumvented by voluntary dismissal.... Rule 2–602 may not be used to certify questions of law from the circuit courts to the appellate courts." *Collins,* 158 Md.App. at 273–74, 857 A.2d at 148.

## D.

■■■■ Petitioners argue that the Court of Special Appeals erroneously held that the orders entered by the Circuit Court on remand, following our decision in *Smith,* were not final and appealable. Petitioners urge this Court to recognize a misjoinder remediable under Maryland Rule 2–213. Specifically, Petitioners contend that proper joinder of parties requires "that the parties assert a right to relief jointly, in respect to or arising out of the same transaction or occurrence and that they include any question of law or fact common to all of these persons which will arise in the action," but that "[t]he circumstances of the exposures suffered by the children in their separate residences [in this case have] no similarity to the exposures suffered by the other plaintiffs." Petitioners would have this Court conclude that "[t]he claims presented by the plaintiffs in the individual families bore no similarity to the claims presented by members of the other families." Thus, Petitioners assert that, because the particularized circumstances of each child's lead exposure allegedly varied, the trial court was well within its discretion to sever the families' claims.

Respondents maintain that severance of the plaintiffs' cases into separate actions is wholly inappropriate in the circumstances present here. They assert that Petitioners are attempting to fabricate a final judgment and that such an effort

should be rejected. According to Respondents, "[t]o accept Petitioners' attempted shortcuts around the final judgment rule ... would allow parties to manipulate cases and create appellate jurisdiction in circumstances [where] the rules intend to prohibit [it]."

We conclude that, on this record, severance of the plaintiffs' claims along family lines under Maryland Rule 2-213 was inappropriate and that Petitioners (the Smith plaintiffs), perhaps understandably, are attempting to circumvent the final judgment rule. The plaintiffs (including Petitioners) joined in filing a single complaint alleging fifteen counts on behalf of *all the plaintiffs* against the defendants. Nothing has changed since we noted in *Smith* that allowing each family's claims to proceed in piecemeal fashion may lead to delayed resolution of the plaintiffs' claims, greater uncertainty as to the status of parties (two defendants already have entered bankruptcy), and set the stage for multiple additional appeals. *Smith*, 386 Md. at 27, 871 A.2d at 553–54. Additionally, Petitioners and the other plaintiffs admitted that common issues affect the outcome of all the claims in their Motion to Sever and Stay and their Motion for Final Judgment. Paragraph 6 of the Motion to Sever and Stay notes that "[a]s the judgments entered in the Smith plaintiffs' cases were directly relevant and applicable to all plaintiffs' cases, judicial economy dictates that the four remaining cases be stayed pending the appeal of the Smith cases." Paragraph 1 of plaintiffs' Motion for Final Judgment acknowledges that "[m]any, if not all, of the issues to be appealed in connection with the Smith plaintiffs are directly relevant and pertinent to the other four cases." For this reason, "severance of the claims ... would pose a significant danger of inconsistent judgments in the separate actions." *German by German*, 896 F.Supp. at 1400–01; *see also Smith*, 386 Md. at 25–26, 871 A.2d at 553 (noting that "partial rulings by the appellate court may do more to confuse than clarify ... unresolved issues").

Petitioners nevertheless argue that severance under Maryland Rule 2-213 was justified because the facts necessary to show liability in each family's claims may vary. Even assum-

ing that the trial court did not rely on plaintiffs' errant interpretation of our holding in *Smith* and found, as Petitioners' urge, that individual questions of fact accompany each family's claims, such a finding is justification for separate trials under Maryland Rule 2–503(b) (as the trial court initially granted), but not for severance under Rule 2–213. "[T]he issues in [the plaintiffs'] litigations arise out of the same transaction, occurrence, or series of transactions, and . . . there is a common question of law or fact with respect to all or part of the action." NIEMEYER & SCHUETT, *supra* at 143. "The similarities of the claims of the persons joined *need not be total,*" and "the rule is not so restrictive that joinder may be employed only when the results on all claims would be the same." *Id.* (emphasis added).

Plaintiffs "so transparently . . . attempt to separate an essentially unitary action [for the purpose of circumventing the final judgment rule], that [the Circuit Court's grant of the motion for severance in this case] should be disregarded out of hand as devoid on its face of any foundation for appellate jurisdiction or, at least, an abuse of discretion with the same result." *Spencer, White, & Prentis, Inc.,* 498 F.2d at 362; *see Silbersack,* 402 Md. at 687, 938 A.2d at 863; *Smith,* 386 Md. at 24–25, 871 A.2d at 552; *Collins,* 158 Md.App. at 273–74, 857 A.2d at 147–48. For these reasons, we affirm the judgment of the Court of Special Appeals. "There is a certain implausibility in a white blackbird, a two-year old yearling, or a separated inseparable." *Spencer, White, & Prentis, Inc.,* 498 F.2d at 364.

We shall not answer, therefore, Petitioners' remaining questions going to the merits of the underlying claims.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**